**UNITED STATES v. SAMUEL DUNKEL & CO., Inc., et al.**

**Nos. 31, 32, Docket 21625, 21626.**

United States Court of Appeals Second Circuit.

Argued Oct. 3, 1950.

Decided Oct. 31, 1950.

Mario Pittoni, Lynbrook, N. Y., for appellants.

Irving J. Higbee, United States Attorney, Syracuse, N. Y., and L. E. Broome and James W. Knapp, Attorneys, U. S. Department of Justice, Washington, D. C., for appellee.

Before L. HAND, Chief Judge, and SWAN and CLARK, Circuit Judges.

SWAN, Circuit Judge.

These appeals bring up for review judgments of conviction under two indictments based on fraudulent sales of dried egg powder under wartime contracts which Samuel Dunkel & Co., Inc. had with Federal Surplus Commodities Corporation, a governmental instrumentality.[1] The other corporate appellant is Sondra Egg Products Corp. which operated an egg powder drying plant at Walton in the Northern District of New York, and was affiliated with Dunkel & Co. Charles Cohen, his son Julius, and Carl Ebbighausen were officers or employees of both corporations; Sidney Atlas, the other individual appellant, was manager of the Sondra drying plant. The indictments were returned in April 1943. The first indictment charged the appellants, together with Jacob Ferber who pleaded guilty and testified against them, with conspiring to defraud the United States of approximately $650,000 by delivering under contracts with Federal Surplus Commodities Corporation about 650,000 pounds of rejected egg powder and falsely representing that it had been tested and found to comply with the terms and conditions of the contracts, in violation of 18 U.S.C.A. § 88.[2] The alleged period of the conspiracy was between August 1, 1941 and November 1, 1942. The second indictment charged that between May 1, 1942 and November 1, 1942 the appellants, together with Jacob Ferber, conspired to defraud the United States by obtaining the payment of certain false claims in violation of 18 U.S. C.A. § 83.[3] Six such false claims were specified. The charges of falsity in part

1. See 15 U.S.C.A. § 713c.

2. Now 18 U.S.C.A. § 371.

3. Now 18 U.S.C.A. § 286.

were the same as those contained in the first indictment but some of them differed; as for example, that the date of manufacture of the egg powder was falsely stated. The indictments were consolidated for trial and a trial was had in 1943 at which all the appellants were convicted under both indictments, except Ebbighausen and Atlas who were acquitted under the § 83 indictment. Upon appeal the judgments were reversed on a technical ground and a new trial was ordered.[4]

Upon the second trial all the defendants were again convicted under the first indictment and all but Ebbighausen and Atlas under the second. These two were not again brought to trial on that indictment.[5] All have appealed and have been released on bail. The various errors they assign, eleven in number, will be considered seriatim.

 They first contend that the indictments on their face allege seven separate and distinct conspiracies, of which six were included in the § 83 indictment; that the proof also showed seven different conspiracies; and that the jury was instructed to determine whether there were two separate conspiracies. This, they assert, violated the principles enunciated in Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L. Ed. 1557. The Kotteakos case is completely different from the case at bar. There the indictment charged a single conspiracy and the proof showed a number of separate unrelated conspiracies whose members were unknown to each other although one key figure, Simon Brown, was a party to each. The court held that there was a fatal variance between proof and indictment which could not be deemed nonprejudicial. Here the accused were associated in business and were engaged in the common enterprise of putting off upon the United States egg powder different from what they represented it to be. Pursuant to this purpose they presented false claims on several different occasions but this did not mean that each false claim was a separate conspiracy. Indeed, had the § 83 indictment so charged it would have violated the rule of Braverman v. United States, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23, which forbids multiplying conspiracies where the evidence shows only one agreement. As to the charge that the jury might convict on both indictments if they found two conspiracies, we see no error. A conspiracy to defraud the United States by delivering egg powder which had been rejected by the Department of Agriculture is an offense under § 88; a conspiracy to obtain payment by a false claim is a separate offense under § 83. In part the proof overlapped but not altogether. Thus proof of a false affidavit as to the date of manufacture of egg powder which had never been rejected would be relevant under the § 83 indictment but not under the § 88 indictment.

 Complaint is made of consolidation of the indictments for trial. This is permissible under the Federal Rules of Criminal Procedure.[6] It is difficult to imagine a more appropriate occasion for joinder than that here presented. Originally all the accused in one were accused in the other and all the evidence in one was relevant in proof of the other. After the acquittal of Ebbighausen and Atlas on the first trial it is true that they were no longer parties to the § 83 indictment. But identity of parties in both indictments is not a prerequisite to consolidation. See United States v. Gottfried, 2 Cir., 165 F.2d 360, 363, certiorari denied 333 U.S. 860, 68 S.Ct. 738, 92 L.Ed. 1139.

---

4. United States v. Samuel Dunkel & Co., Inc., et al., 2 Cir., 173 F.2d 506.

5. Samuel Dunkel & Co. was fined $10,000 and Sondra Egg Products Corp. $5,000 on each indictment. Charles Cohen was sentenced to two years imprisonment on each, to be served concurrently, and was fined $1,000 on the first indictment and $4,000 on the second. Julius Cohen was sentenced to two years on the first and three years on the second to run concurrently, and was fined $1,000 on the first and $2,000 on the second. Ebbighausen and Atlas were each sentenced to a year and a day and fined $1,000 on the first indictment.

6. Rule 13, 18 U.S.C.A.

The third contention is that acquittal of Atlas on the first trial deprived the court of jurisdiction to try the other defendants on the § 83 indictment. The argument appears to be that the only overt acts charged in the indictment to have been committed in the Northern District were alleged to have been done by Atlas and that his acquittal was a conclusive finding that he did not do them; hence the court lost jurisdiction. The contention is wholly baseless. The verdict of acquittal means merely that Atlas did not conspire as alleged. It decides nothing as to whether or not he committed the acts he was charged to have committed; he may have done them but done them innocently in the jury's opinion. The conviction of the Sondra Company, while acquitting Atlas, may well be thought inconsistent but inconsistency in a jury's verdict is of no significance in a conspiracy case where, as here, several defendants are convicted. United States v. Austin-Bagley Corp., 2 Cir., 31 F.2d 229, certiorari denied 279 U.S. 863, 49 S.Ct. 479, 73 L.Ed. 1002.

It is next argued that the sentence of Julius Cohen should be limited to the two years imposed under the § 88 indictment. The theory of merger upon which this argument rests is wholly inapplicable where the two offenses are of equal rank. See 1 Wharton's Criminal Law, 12th ed. § 39.

Equally without merit is the contention that the proof showed a conspiracy to defraud the Federal Surplus Commodities Corporation, not the United States. Congress has expressly recognized this corporation "as an agency of the United States".[7] Fraud upon such an agency is fraud upon the United States. See Haas v. Henkel, 216 U.S. 462, 479, 30 S.Ct. 249, 54 L.Ed. 569; United States v. Walter, 263 U.S. 15, 18, 44 S.Ct. 10, 68 L.Ed. 137. Compare 18 U.S.C.A. 1948 ed. § 6.

Objection is made to the admission of exhibit 124 which is an accountant's summary compiled from exhibits previously admitted; it gave the total barrels, total weight and total contract price of rejected lots of egg powder. It was clearly relevant. The objection was that the total contract price of $627,000 would unduly prejudice the jury and was unnecessary since, as the court told the jury, it is not necessary under the § 88 indictment that the Government be actually defrauded of $625,000 or any part thereof. We think the exhibit was properly received.

A similar objection is advanced with respect to testimony as to the salaries paid Charles Cohen and Julius Cohen. The amount of their salaries was indicative of their managerial responsibility and was relevant to proof of their stake in the enterprise. See United States v. Di Re, 2 Cir., 159 F.2d 818, 819, affirmed, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210.

Complaint is made that in the course of its instructions the Court said that the issues are "simple and the questions of fact concise." No exception appears to have been taken, which is enough to dispose of this point. Moreover the statement is correct. The issues were simple; only the evidence tracing the various barrels through the unlawful transactions was complicated. Equally unmeritorious is the complaint as to the instruction with respect to the Government's claim concerning Charles Cohen's connection with the enterprise.

It is urged that the evidence against Charles Cohen is insufficient to support his conviction. It will suffice to say that we think the evidence against him was ample. Ferber's testimony shows that Charles Cohen gave instructions as to one of the unlawful substitutions. Nor is it likely that he would have received the highest salary of any of the officers if he was not taking an active part in the business.

Finally it is urged that errors were committed with respect to Atlas. This contention appears too trivial to require discussion. On the whole record the guilt of Atlas is clear and the trial accorded him was entirely fair.

Judgments affirmed.

---

7. 15 U.S.C.A. § 713c.