**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jean Robert MORI, Defendant-Appellant.**

**No. 27908.**

United States Court of Appeals,
Fifth Circuit.

June 4, 1971.

Ainsworth, Circuit Judge, dissented and filed opinion.

Barry L. Garber, Miami, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., Michael J. Osman, William C. White, Asst. U. S. Attys., Miami, Fla., Will Wilson, Asst. Atty. Gen., Beatrice Rosenberg, Roger A. Pauley, Attys., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before THORNBERRY, GOLDBERG, and AINSWORTH, Circuit Judges.

GOLDBERG, Circuit Judge:

Jean Robert Mori was indicted in 1967 on two counts involving narcotics violations: Count 1, conspiracy to commit an offense against the United States in violation of 18 U.S.C.A. § 371, the general conspiracy statute; and Count 3, conspiracy to import a narcotic drug into the United States in violation of 21 U.S.C.A. § 174.[1] Following a jury trial, defendant Mori was found guilty on both counts. He was subsequently sentenced to five years and a fine of $7,500 as to Count 1, and twenty years and a fine of $20,000 as to Count 3, the sentences of confinement to run concurrently. From these convictions and sentences defendant now appeals.

Mori first argues that the trial court erred in determining that he could be convicted and sentenced on both counts. In essence defendant contends that Counts 1 and 3 constitute a single conspiracy, not separate conspiracies. We agree.

Count 3 charged defendant Mori with conspiracy to import a narcotic drug in violation of the narcotic conspiracy sec-

---

1. In addition to these conspiracy counts the indictment contained four other counts variously charging Josette Bauer and Willy Lambert, Mori's alleged co-conspirators, with substantive offenses.

Bauer and Lambert, prior to trial, pled guilty to two counts of the indictment and turned state's evidence. They are consequently not involved in this appeal.

tion of 21 U.S.C.A. § 174.[2] Count 1, on the other hand, charged defendant with conspiracy to commit an offense against the United States under the general conspiracy statute, 18 U.S.C.A. § 371.[3] The offense against the United States which Mori was alleged to have conspired to commit was traveling in foreign commerce to promote unlawful activity in violation of 18 U.S.C.A. § 1952.[4] Rounding out this somewhat circuitous, three-tiered scheme, the indictment charged that the unlawful activity which defendant traveled abroad to promote was the importation of a narcotic drug in violation of the substantive provisions of 21 U.S.C.A. § 174.[5]

A bare reading of the indictment readily reveals that in essence defendant was charged with participation in a single, indivisible conspiracy to import narcotic drugs, which conspiracy had

2. Section 174 proscribes certain substantive acts as well as conspiracies to perform those acts. The section in full provides:

"Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000. For a second or subsequent offense (as determined under section 7237(c) of the Internal Revenue Code of 1954), the offender shall be imprisoned not less than ten or more than forty years and, in addition, may be fined not more than $20,000.

Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

3. Section 371 provides:
"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

"If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor. June 25, 1948, c. 645, 62 Stat. 701."

4. Section 1952, as it read in 1967, provided:

"(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—

(1) distribute the proceeds of any unlawful activity; or

(2) commit any crime of violence to further any unlawful activity; or

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

(b) As used in this section 'unlawful activity' means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics, or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, or (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States.

(c) Investigations of violations under this section involving liquor or narcotics shall be conducted under the supervision of the Secretary of the Treasury."

This section was amended in 1970 in particulars not relevant to the present case. See 18 U.S.C.A. § 1952 (Supp.1971).

5. For the substantive provisions of section 174, see note 2 supra.

several illegal objects and violated two criminal conspiracy statutes. The parties, the duration, and the overt acts alleged in both conspiracy counts were the same.[6] Thus, regardless of the number of criminal statutes involved,

6. The identity of the conspiracies charged in Counts 1 and 3 is manifest, as the following excerpts from the indictment reveal:

The Grand Jury charges:

### COUNT ONE

1. That from on or about July 15, 1967 and continuing until the date of the return of this indictment, in the Southern District of Florida and elsewhere

JOSETTE CLAIRE BAUER
nee GEISSER, a/k/a
PAULETTE LOUISE FALLAI;
WILLY CHARLES LAMBERT,
JEAN ROBERT MORI

the defendants herein, and diverse other persons presently unknown to the Grand Jury, did unlawfully, wilfully, and knowingly, and with intent to defraud, combine, conspire, confederate, and agree with each other to commit offenses against the United States of America, to wit:

a. To travel in foreign commerce between Cannes, France and Port Everglades, Florida, United States of America, in the County of Broward in the Southern District of Florida, with the intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of an unlawful activity, that is, to fraudulently and knowingly import and bring into the United States of America a narcotic drug in violation of the laws of the United States of America, 21 U.S. C. § 174, and thereafter to perform and attempt to perform acts to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of said unlawful activity, all in violation of Title 18, United States Code, Section 1952.

2. That said unlawful combination, conspiracy, confederation, and agreement was to be accomplished by the means, methods and manner following:

It was a part of the said conspiracy that the aforesaid defendants, Josette Claire Bauer nee Geisser a/k/a Paulette Louise Fallai and Willy Charles Lambert would travel aboard the ocean vessel Federico C from Cannes, France to Port Everglades, Florida carrying with them 14,660 grams of heroin and would frauduently and knowingly import and bring into the United States of America and deliver said heroin to a person or persons presently to the Grand Jury unknown upon arrival at Port Everglades, Florida in the County of Broward in the State of Florida, in the Southern District of Florida.

That at the times and places hereinafter named the aforementioned defendants, in furtherance of said conspiracy and to effectuate the objects and purposes thereof, did commit and wilfully cause to be committed the following overt acts:

### OVERT ACTS

1. On or about August 15, 1967, JOSETTE CLAIRE BAUER from the Hotel LaSalle, Montreal, Canada, made two telephone calls to Jean Robert Mori at the Hotel Plaza, New York City, New York.

2. On or about August 16, 1967, WILLY CHARLES LAMBERT at Geneva, Switzerland, purchased two tickets for passage aboard the Federico C. for himself and Josette Claire Bauer, departing from Cannes, France, on August 20, 1967, to Lisbon, Portugal, via Port Everglades, Florida.

3. On or about August 17, 1967, WILLY CHARLES LAMBERT registered at the Hotel Negresco in Nice, France.

4. On or about August 17, 1967, JOSETTE CLAIRE BAUER registered at the Hotel Negresco in Nice, France.

5. On or about August 18, 1967, WILLY CHARLES LAMBERT placed a telephone call to Jean Robert Mori at the Plaza Hotel, New York City, New York.

6. On or about August 18, 1967, JEAN ROBERT MORI placed a telephone call to Josette Claire Bauer at the Hotel Negresco, Nice, France.

7. On or about August 31, 1967, JEAN ROBERT MORI registered at the Yankee Clipper Hotel, Fort Lauderdale Beach, Florida.

8. On or about August 31, 1967, WILLY CHARLES LAMBERT concealed 4,173 grams of heroin.

9. On or about August 31, 1967, JOSETTE CLAIRE BAUER purchased a large handbag.

10. On or about August 31, 1967, JOSETTE CLAIRE BAUER rented a locker at the Greyhound Bus Terminal, 1622 Collins Avenue, Miami Beach, Florida.

All in violation of Title 18, United States Code, Section 371.

the essence of the offense for which Mori was indicted was a single criminal agreement:

"For when a single agreement to commit one or more substantive crimes is evidenced by an overt act, as the statute requires [predecessor to 18 U.S.C.A. § 371], the precise nature and extent of the conspiracy must be determined by reference to the agreement which embraces and defines its objects. Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one." Braverman v. United States, 1942, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23.

Therefore, even though the conspiracy charged here envisioned the violation of several substantive provisions, including 18 U.S.C.A. § 1952 and 21 U.S.C.A. § 174, it was a single agreement which constituted a single offense subject to a single punishment. *See generally* Youst v. United States, 5 Cir. 1945, 151 F.2d 666.

The further fact that this single agreement theoretically violated the general

*COUNT THREE*

That beginning on or about July 15, 1967, and continuing until the date of the return of this indictment, in Broward County in the Southern District of Florida

JOSETTE CLAIRE BAUER
nee GEISSER, a/k/a
PAULETTE LOUISE FALLAI;
WILLY CHARLES LAMBERT,
JEAN ROBERT MORI

and divers other persons presently to the Grand Jury unknown, did unlawfuly, wilfully, knowingly, and with intent to defraud, combine, conspire, confederate, agree and have a tacit understanding with each other to commit offenses against the United States of America, to wit:

1. To import and bring into the United States and territory under its jurisdiction, a narcotic drug, that is approximately 14,660 grams of heroin, contrary to law and,

2. To unlawfully, wilfully and knowingly conceal and facilitate the transportation of a narcotic drug, that is approximately 14,660 grams of heroin, knowing said narcotic drug to have been imported into the United States and territory under its jurisdiction, contrary to law.

And that the defendants, in furtherance of said conspiracy and to effectuate the objects and purposes thereof, did commit, and wilfully cause to be committed the following overt acts:

*OVERT ACTS*

1. On or about August 15, 1967,
   JOSETTE CLAIRE BAUER
from the Hotel LaSalle, Montreal, Canada, made two telephone calls to Jean Robert Mori at the Hotel Plaza, New York City, New York.

2. On or about August 16, 1967,
   WILLY CHARLES LAMBERT
at Geneva, Switzerland, purchased two tickets for passage aboard the Federico C. for himself and Josette Claire Bauer, departing from Cannes, France, on August 20, 1967, to Lisbon, Portugal, via Port Everglades, Florida.

3. On or about August 17, 1967,
   WILLY CHARLES LAMBERT
registered at the Hotel Negresco in Nice, France.

4. On or about August 17, 1967,
   JOSETTE CLAIRE BAUER
registered at the Hotel Negresco in Nice, France.

5. On or about August 18, 1967,
   WILLY CHARLES LAMBERT
placed a telephone call to Jean Robert Mori at the Plaza Hotel, New York City, New York.

6. On or about August 18, 1967,
   JEAN ROBERT MORI
placed a telephone call to Josette Claire Bauer at the Hotel Negresco, Nice, France.

7. On or about August 31, 1967,
   JEAN ROBERT MORI
registered at the Yankee Clipper Hotel, Fort Lauderdale Beach, Florida.

8. On or about August 31, 1967,
   WILLY CHARLES LAMBERT
concealed 4,173 grams of heroin.

9. On or about August 31, 1967,
   JOSETTE CLAIRE BAUER
purchased a large handbag.

10. On or about August 31, 1967,
    JOSETTE CLAIRE BAUER
rented a locker at the Greyhound Bus Terminal, 1622 Collins Avenue, Miami Beach, Florida.

All in violation of Title 21, United States Code, Section 174.

conspiracy statute as well as the more specific narcotics conspiracy statute is similarly irrelevant. Our case is unlike *American Tobacco Co. v. United States,* 1946, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575, where the Supreme Court held that a conspiracy to violate section 1 of the Sherman Act, 15 U.S.C.A. § 1, and a conspiracy to violate section 2 of the Sherman Act, 15 U.S.C.A. § 2, gave rise to separate, distinct statutory offenses. Sections 1 and 2 specifically provide that conspiracies to violate their provisions constitute separate criminal acts. In the instant case, however, we do not have two independent criminal conspiracy statutes. Rather, the defendant herein was indicted under a specific conspiracy statute and a general conspiracy statute. Under general principles of statutory constructions, the catchall provisions of section 371 become subsumed under the particular, specific provisions of section 174. Moreover, even in *American Tobacco,* the Court recognized that its holding would not apply to a course of conduct which constituted a single, indivisible agreement:

> "We believe also that in accordance with the Blockburger case [Blockburger v. United States, 1932, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306], §§ 1 and 2 of the Sherman Act require proof of conspiracies which are reciprocally distinguishable from and independent of each other although the objects of the conspiracies may partially overlap." 328 U.S. at 788, 66 S.Ct. at 1129.

*See generally* United States v. Edwards, 2 Cir. 1966, 366 F.2d 853, 866–867; Masi v. United States, 5 Cir. 1955, 223 F.2d 132, cert. denied, 350 U.S. 919, 76 S.Ct. 208, 100 L.Ed. 805; United States v. Anderson, 7 Cir. 1939, 101 F.2d 325; United States v. DeSapio, S.D.N.Y.1969, 299 F.Supp. 436, 440–442; United States v. American Honda Motor Co., N.D.Cal. 1967, 271 F.Supp. 979, 982–987. Since we find that defendant Mori was involved in only a single conspiracy, not "independent" and "distinguishable" conspiracies, cumulative punishment was impermissible under the rationale of *Blockburger, Braverman,* and *American Tobacco.* Accordingly, the trial court erred in imposing punishment on both counts.

■ Nevertheless, the Government contends that defendant was not prejudiced since the sentences of confinement were imposed to run concurrently. This argument, however, fails to take account of the fact that the trial court imposed cumulative fines on both counts with the result that the total fine exceeded the maximum possible fine under either conspiracy statute.[7] Moreover, as we held in United States v. White, 5 Cir. 1971, 440 F.2d 978, where separate sentences on two or more counts are impermissible, the error is not cured by the existence of concurrent sentences. *See also* Holland v. United States, 5 Cir. 1967, 384 F.2d 370. Rather, in most instances the proper remedy is to vacate the sentences and remand to the district court for resentencing on one count.

■ Defendant would have us go further and remand for a new trial. In support of this position he cites Milanovich v. United States, 1961, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773. In *Milanovich* the Supreme Court held that simple resentencing was insufficient to cure the error of convicting and sentencing a single defendant for robbery and receiving under the Federal Bank Robbery Act, 18 U.S.C.A. § 2113. Since robbery and receipt of stolen money were inconsistent offenses, the *Milanovich* Court held that the jury must be instructed that it can return a verdict of guilty on either offense, but not on both. However, in United States v. White, *supra,* we held that where the counts are not inconsistent, but instead overlapping, the proper remedy is simple resentencing. That is the situation in the

---

7. 18 U.S.C.A. § 371, the general conspiracy statute, provides for a maximum fine of $10,000, while 21 U.S.C.A. § 174, the narcotic conspiracy statute, provides for a maximum fine of $20,000.

instant case. Counts 1 and 3, charging separate conspiracies, are simply cumulative and overlapping. The counts are not inconsistent. *Cf.* United States v. Maryland State Licensed Bev. Ass'n, 4 Cir. 1957, 240 F.2d 420; Williams v. United States, 5 Cir. 1956, 238 F.2d 215, cert. denied, 352 U.S. 1024, 77 S.Ct. 589, 1 L.Ed.2d 596. Thus, while punishment on both counts is impermissible, a new trial is not required. *See* Braverman v. United States, *supra.* We therefore vacated the sentences of fine and imprisonment and remand the case to the district court for resentencing on one count. *See* Masi v. United States, *supra;* Farnsworth v. Zerbst, 5 Cir. 1938, 97 F. 2d 255.

In addition defendant argues that a new trial is required because of prejudicial comments made by the trial judge during the course of the trial. The record reveals that the court instructed the defendant that if he testified he would have to submit to cross-examination by the Government. Mori contends that this comment, shown by the record to have taken place in the presence of the jury, constituted an impermissible comment on his failure to take the stand and testify. *See* Griffin v. California, 1965, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106.

Subsequent to the filing of defendant's brief on appeal, the Government petitioned the trial court under Federal Rule of Appellate Procedure 10(e) [8] to correct the record to reflect that the challenged comment took place outside the presence of the jury. After hearing arguments by counsel for the defendant and by counsel for the Government, the trial court, without a further evidentiary hearing granted the Government's motion to correct the record. Defendant objects to the timing of the Government's motion and the procedure employed to resolve the dispute. These objections are without merit.

■■ Under Rule 10(e) it is clear that the district court may consider a motion to correct the record even after appeal has been taken. Once the motion is made, the differences between the parties "shall be submitted to and settled by" the district court. Counsel in the instant case had notice of the motion and opportunity to present argument before the district court. There was here no necessity for a complete evidentiary hearing. *See* Federal Rule of Appellate Procedure 10(c); 9 J. Moore, Federal Practice ¶ 210.08 [3], at 1653. The trial judge ordered the record corrected pursuant to his recollection of the events at issue, and that determination, absent a showing of intentional falsification or plain unreasonableness, is conclusive. Buick v. United States, 9 Cir. 1968, 396 F.2d 913–914 n. 1; Gunther v. E. I. duPont deNemours & Co., 4 Cir. 1958, 255 F.2d 710; Belt v. Holton, 1952, 90 U.S.App.D.C. 148, 197 F.2d 579; Clawans v. White, 1940, 71 App.D.C. 362, 112 F.2d 189, cert. denied, 311 U.S. 646, 61 S.Ct. 16, 85 L.Ed. 412; 9 J. Moore, *supra,* ¶ 210.08 [1], at 1640 Since defendant has not effectively challenged the conclusions reached by the trial court, we must read the record to show that the trial court's comment took place outside the presence of the jury. Having

---

8. Rule 10(e) provides:

"(e) Correction or Modification of the Record. If any difference arises as to whether the record truly discloses what occurred in the district court, the difference shall be submitted to and settled by that court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the district court either before or after the record is transmitted to the court of appeals, or the court of appeals, on proper suggestion or of its own initiative, may direct that the omission or misstatement be corrected, and if necessary that a supplemental record be certified and transmitted. All other questions as to the form and content of the record shall be presented to the court of appeals."

done so, we find defendant's argument of reversible error plainly without merit.

The sentences of fine and conviction are vacated and the case is remanded for the imposition of sentence on one count.

Vacated and remanded.

AINSWORTH, Circuit Judge, (dissenting):

I dissent from the decision to remand this case to the District Court for resentencing. I would affirm the judgment and sentence in all respects.

Appellant Mori was indicted and convicted on two counts of conspiracy. Count 1 charged a conspiracy under 18 U.S.C. § 371, the general conspiracy statute, to violate 18 U.S.C. § 1952, the Travel Act; count 3 charged a conspiracy under 21 U.S.C. § 174, the Narcotic Drugs Import and Export Act. The majority, relying on Braverman v. United States, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942), holds that the indictment charged a single agreement constituting a single offense for which only a single punishment could be imposed. In my view, American Tobacco Co. v. United States, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946), a more recent case in which the Supreme Court distinguished and limited *Braverman,* is more directly in point. On the authority of American Tobacco and Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958), I would hold that Mori was indicted and convicted of two separate offenses for which it was proper to impose cumulative punishment.

In *Braverman,* the defendants were indicted on seven counts under the general conspiracy statute, each charging a conspiracy to violate a different criminal provision of the Internal Revenue Code relating to moonshining. The jury convicted on all counts, and the Judge imposed consecutive sentences. The Supreme Court reversed and remanded the case for resentencing holding that a single agreement in violation of the general conspiracy statute constituted a single offense for which no

more than one punishment could be imposed.

The instant case, as the Government aptly points out, differs from *Braverman* in that the conduct for which Mori was indicted and convicted constituted a violation of two separate and distinct conspiracy provisions of the United States Code. In *American Tobacco* the Supreme Court distinguished *Braverman* on the same ground. The defendants in *American Tobacco* were charged with (among other things) conspiracies punishable under separate conspiracy provisions of the Sherman Anti-Trust Act. The defendants argued that their conviction on both conspiracy counts constituted double jeopardy or the imposition of unwarranted multiple punishment, relying on *Braverman.* The Supreme Court rejected the claim, stating (328 U.S. at 788, 66 S.Ct. at 1128–1129):

> In contrast to the single conspiracy described in that case in separate counts, all charged under the general conspiracy statute * * *, we have here separate statutory offenses, one a conspiracy in restraint of trade that may stop short of monopoly, and the other a conspiracy to monopolize that may not be content with restraint short of monopoly. One is made criminal by § 1 and the other by § 2 of the Sherman Act.

In this case, as in *American Tobacco,* two separate conspiracy provisions in different statutes are involved, and they require different proof. Count 1 of the indictment charges a conspiracy under 18 U.S.C. § 371 to travel in foreign commerce for unlawful purposes in violation of 18 U.S.C. § 1952. The travel element is unique to this count; proof of this element is immaterial to count 3, which charges a conspiracy under 21 U.S.C. § 174 to import and conceal narcotics. Compare United States v. Samuel Dunkel & Co., 2 Cir., 1950, 184 F.2d 894, in which the Second Circuit sustained the imposition of two sentences for a single agreement to defraud the Government, one under the general conspiracy statute,

the other under a specific conspiracy statute requiring "overlapping" but not identical proof.

The question whether an agreement which violates two separate federal conspiracy statutes constitutes two separate offenses is one to be resolved by reference to Congressional intent. See Milanovich v. United States, 365 U.S. 551, 554, 81 S.Ct. 728, 729–730, 5 L.Ed. 2d 773 (1961); Callanan v. United States, 364 U.S. 587, 596–597, 81 S.Ct. 321, 326–327, 5 L.Ed.2d 312 (1961); Heflin v. United States, 358 U.S. 415, 419–420, 79 S.Ct. 451, 453–454, 3 L.Ed. 2d 407 (1958); Gore v. United States, 357 U.S. 386, 388–392, 78 S.Ct. 1280, 1282–1284, 2 L.Ed.2d 1405 (1958); Prince v. United States, 352 U.S. 322, 325–329, 77 S.Ct. 403, 405–407, 1 L.Ed. 2d 370 (1957); Note, Developments in the Law: Criminal Conspiracy, 72 Harv. L.Rev. 920, 964–66 (1966).[1]

Part of Congress's purpose in enacting 18 U.S.C. § 1952 was to assist State governments in combating interstate racketeering operations violative of State law. See United States v. Nardello, 393 U.S. 286, 292, 89 S.Ct. 534, 538, 21 L.Ed. 2d 487 (1969); H.R.Rep. No. 966, 87th Cong., 1st Sess. (1961), in 1961 U.S. Code Cong. & Admin.News at p. 2664. However, Congress broadened the scope of Section 1952 to encompass travel in foreign commerce for the purpose of carrying on activities violative of federal law. Only certain classes of federal offenses, narcotics offenses among them, are reached under Section 1952. In this respect, Section 1952 should be viewed, as the Supreme Court read the statutes involved in Gore v. United States, *supra*, as evidencing a determination on the part of Congress "to turn the screw of

the criminal machinery—detection, prosecution and punishment—tighter and tighter" on illicit traffic in narcotics. 357 U.S. at 390, 78 S.Ct. at 1283. Section 1952 and 21 U.S.C. § 174 were enacted at different times, "to the end of dealing more and more strictly with, and seeking to throttle more and more by different legal devices," the international drug trade. See Gore v. United States, *supra*, 357 U.S. at 391, 78 S.Ct. at 1284. I find nothing from which to infer that Congress intended that conspiracy to import narcotics and conspiracy to travel to this country for the purpose of carrying on an illegal business enterprise involving narcotics should be treated as a single crime. Thus I would hold that counts 1 and 3 of the indictment under which appellant Mori was convicted state two distinct federal offenses, and would affirm the judgment and sentence of the District Court.

---

1. The majority in this case relies on a sentence from *American Tobacco* invoking the old "same evidence" test as stated in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). See Note, 67 Yale L.Rev. 916, 921–24 (1958); Comment, Statutory Implementation of Double Jeopardy Clauses, 65 Yale L.Rev. 339, 347–49 (1956). In more recent decisions the Supreme Court

has all but abandoned the same evidence test, in favor of the test of Congressional intent. See especially Gore v. United States, cited in text, in which the majority, over a vigorous dissent by Mr. Justice Brennan, reaches a result which the same evidence test would not permit, and reinterprets *Blockburger* itself as a case which turned on Congressional intent.