**Charles Leroy TIMBERLAKE and Mitchell Skiff Engelhart, Plaintiffs-Appellants,**

**v.**

**UNITED STATES of America, Defendant-Appellee.**

Nos. 84–2563, 2564.

United States Court of Appeals, Tenth Circuit.

July 23, 1985.

Thomas H. Connors, Miami, Fla., for plaintiffs-appellants.

Donn F. Baker, U.S. Atty., E.D. Oklahoma, Paul G. Hess, Asst. U.S. Atty., E.D. Oklahoma, Muskogee, Okl., for defendant-appellee.

Before McKAY, DOYLE and LOGAN, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R.App.P. 34(a); Tenth Circuit R. 10(e). The cause is therefore ordered submitted without oral argument.

Appellants Mitchell Skiff Engelhart and Charles Leroy "Chuck" Timberlake, airplane pilots by trade, became involved in a summer 1983 drug run from Colombia. On June 30, 1983, Engelhart and Timberlake left Grand Prairie, Texas, in a twin-engine Cessna Titan airplane. They flew to an isolated airfield in Colombia, where they picked up 23 duffel bags containing approximately 460 pounds of 97 percent pure cocaine. They flew to an isolated airfield located near Talihina, in the Eastern District of Oklahoma. They arrived at about 3:35 a.m., CDT, on July 1, 1983. The cocaine was removed from the plane. Appellants then flew to Dallas-Fort Worth, Texas, where they were arrested later that day. Engelhart had an understanding that he would be paid $175,000 for this flight; Timberlake was to be paid $70,000.

Appellants were indicted by a federal grand jury in the Eastern District of Oklahoma on July 27, 1983. This was for their transportation of the drugs as part of a conspiracy. Timberlake was indicted on six specific counts; Engelhart was indicted on seven. Both appellants entered into plea agreements with the United States Attorney whereby each pleaded guilty to three counts of the indictments and agreed to cooperate with the government in connection with the prosecution of the other conspirators. No promises were made by the government as to the sentences that appellants would receive. The government's only promise was to bring appellants' cooperation to the attention of the court at the time of sentencing. Both the government and the appellants kept their portions of the bargain.

The United States District Court for the Eastern District of Oklahoma, after ascertaining that there was a sufficient factual basis for appellants' guilty pleas and determining that the pleas were knowingly and voluntarily entered, accepted the guilty pleas on September 2, 1983. On October 26, 1983, the court sentenced each appellant to twenty-five years imprisonment. Appellants retained new counsel and launched collateral attacks on their sentences by means of motions to vacate them pursuant to 28 U.S.C. § 2255. However, the district court denied their motions in memorandum opinions and judgments which were issued September 25, 1984 to

Timberlake, and on September 27, 1984 to Engelhart. These appeals are from the district court's denial of the motions under § 2255.

Appellants have advanced several arguments in support of their appeal. Both of them argue that their convictions on multiple conspiracy counts violate the double jeopardy clause of the Fifth Amendment. The appellants also contend that they were denied effective assistance of counsel in violation of the Sixth Amendment. A final contention from appellant Engelhart maintains that the district court failed to ascertain whether there was a factual basis for his guilty pleas to Counts 3 and 5 of the indictment. We are unable to find any merit in any of appellants' arguments and thus affirm the district court's denial of their § 2255 motions.

We now address ourselves to the contention that there was double jeopardy which voids the pleas of guilty. Engelhart pleaded guilty to conspiracy to import cocaine in violation of 21 U.S.C. § 963, conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, and conspiracy to travel in interstate and foreign commerce with intent to promote an unlawful activity contrary to 18 U.S.C. § 371. Appellant Timberlake pleaded guilty to the conspiracy counts. He was charged with violating 21 U.S.C. § 963 and 18 U.S.C. § 371. The appellants now contend that there was but a single conspiracy, and that imposition of several punishments for that single conspiracy under several statutes violates the double jeopardy clause.

■ We disagree with this contention. It is settled that a single illegal transaction may be punished under several statutory provisions if conviction under each statutory provision requires proof of a fact not required for conviction under the other statutory provisions. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). After all, these are separate and distinct violations, the conspiracy and the actual carrying out of the conspiracy. This double jeopardy test focuses on the elements of the crimes, and

not on the specific acts charged in the indictment or the evidence presented at trial. *United States v. Rodriquez*, 612 F.2d 906, 919 (5th Cir.1980), *aff'd. sub nom., Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *see also United States v. Solano*, 605 F.2d 1141 (9th Cir.1979), *cert. denied*, 444 U.S. 1020, 100 S.Ct. 677, 62 L.Ed.2d 652 (1980); *United States v. Peterson*, 524 F.2d 167 (4th Cir.1975), *cert. denied*, 423 U.S. 1088, 96 S.Ct. 881, 47 L.Ed.2d 99 (1976). It is also settled that a single illegal activity may be punished under two distinct and specific conspiracy statutes, *see American Tobacco Co. v. United States*, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946), or under the general conspiracy statute (18 U.S.C. § 371) and a more specific conspiracy statute, *United States v. Barton*, 647 F.2d 224 (2d Cir.), *cert. denied*, 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981).

■ When one applies the rulings in the authorities which are set forth above, we can see that those convictions do not violate any double jeopardy clause. The Supreme Court has already ruled that a single conspiracy may support convictions under both 21 U.S.C. § 963 and 21 U.S.C. § 846. *Albernaz v. United States*, 450 U.S. 333, 339, 101 S.Ct. 1137, 1142, 67 L.Ed.2d 275 (1981). The holding in *Albernaz* effectively disposes of one of appellant Engelhart's double jeopardy arguments. With respect to both appellants' double jeopardy challenges to convictions under both 18 U.S.C. § 371 and 21 U.S.C. § 963, we find that the elements of proof under the two statutes diverge sufficiently that a single conspiracy can support separate violations of the two statutes. 18 U.S.C. § 371 requires proof of an overt act in furtherance of the conspiracy. *See, e.g., United States v. Sterkel*, 430 F.2d 1262, 1263 (10th Cir. 1970). The Fifth Circuit has ruled that no overt act need to be proven in order to obtain a conspiracy conviction under 21 U.S.C. § 963. *See, e.g., United States v. Pool*, 660 F.2d 547, 560 (5th Cir.1981). Inasmuch as the elements required to prove conspiracies under the two statutes

diverge, they constitute separate offenses under the *Blockburger* test, and conviction of both offenses does not violate the double jeopardy clause. Finally, with respect to appellant Engelhart's conviction of conspiracies under both 21 U.S.C. § 846 and 18 U.S.C. § 371, it is to be noted that the elements of proof once again diverge. Conviction on the § 371 count requires proof of an element, intent to travel in interstate commerce to promote an unlawful activity. It does not require the sustaining of a conviction for conspiracy unlawfully to distribute controlled substances under 21 U.S.C. § 846. Consequently, Engelhart's conviction on both of these conspiracy counts does not bring the double jeopardy clause into action. *Cf. United States v. Stevens,* 612 F.2d 1226, 1231 (10th Cir.1979), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1113 (1980). In summary, we find no merit to any of the appellants' double jeopardy arguments.

■ The next argument is that appellants were denied the effective assistance of counsel guaranteed to them by the Sixth Amendment during plea bargaining and at the time of sentencing. They maintain that their earlier counsel did not advise them of proffered plea bargains more favorable than the ones that they ultimately accepted. They also contend that their counsel advised them to plead guilty to charges that violated the double jeopardy clause. This suggests that we must measure these contentions against our rule that "[t]he Sixth Amendment demands that defense counsel exercise the skill, judgment, and diligence of a reasonably competent defense attorney." *Dyer v. Crisp,* 613 F.2d 275, 278 (10th Cir.) (en banc), *cert. denied,* 445 U.S. 945, 100 S.Ct. 1342, 63 L.Ed.2d 779 (1980). When we consider appellants' arguments in light of this rule, we are compelled to reject them. We hold that appellants' Sixth Amendment right to effective representation was not infringed.

The appellants claim that their attorneys were approached by the United States Attorney and offered more advantageous plea bargains than those which they accepted.

However, there is no evidence in the record to support such contentions. In fact, the affidavit of Donn F. Baker, the Assistant United States Attorney who handled this case, dispels that contention. No such offers were ever made to the appellants' attorneys. If the U.S. Attorney had offered a more advantageous plea bargain that was not conveyed to the appellants, and no such offer is at all likely, it is doubtful whether this would justify our reversing these defendants' convictions. *See United States v. Geittmann,* 733 F.2d 1419, 1422 (10th Cir.1984).

Finally, the appellants also claim that their attorneys' failure to develop double jeopardy arguments and advice that they plead guilty to counts that they now allege violated the double jeopardy clause shows the ineffectiveness of their earlier counsel. We find this argument to be without merit. As noted above, there is no legal support for the appellants' double jeopardy arguments. We must conclude, therefore, that trial counsel's failure to pursue those double jeopardy arguments at an earlier stage of this case does not add up to ineffective assistance of counsel.

■ We turn now to appellant Engelhart's final argument. His contention is that the district court failed to ascertain that there was a sufficient factual basis for his guilty plea. This, however, is without merit. The transcript shows that Engelhart's Rule 11 hearing was sufficient. The district court was correct in concluding there was a factual basis for Engelhart's guilty plea. Therefore, we reject Engelhart's argument.

Our conclusion is that the judgments below should be and they are affirmed.

McKAY, Circuit Judge, concurring in part and dissenting in part:

The issue in this case is whether the appellants' guilty pleas under both a general and a specific conspiracy statute violate their rights under the double jeopardy clause.

The appellants were indicted on numerous counts for conspiring to and actually transporting approximately 460 pounds of 97 percent pure cocaine from Colombia to Oklahoma. Both appellants entered into plea bargains with the government. As a result, appellant Engelhart pled guilty to charges of violating 21 U.S.C. § 963 by conspiring to import cocaine in violation of 21 U.S.C. § 952; 21 U.S.C. § 846 by conspiring to possess cocaine with intent to distribute in violate of 21 U.S.C. § 841; and 18 U.S.C. § 371 by conspiring to travel in interstate commerce to promote the importation of cocaine in violation of 18 U.S.C. § 1952(a)(3). Appellant Timberlake pled guilty to charges of violating 18 U.S.C. § 1952(a)(3) by traveling in interstate commerce to promote importation of cocaine; 18 U.S.C. § 371 by conspiring to travel in interstate commerce to promote the importation of cocaine in violation of 18 U.S.C. § 1952(a)(3); and 21 U.S.C. § 963 by conspiring to import cocaine in violation of 21 U.S.C. § 952(a). Appellants now claim that the plea and sentences should be vacated because the charges to which they pled guilty constitute the same offense, and therefore they are being punished twice for the same offense in violation of the double jeopardy clause.

I agree with the majority that appellant Engelhart's conviction under both 21 U.S.C. § 846 and 21 U.S.C. § 963 does not violate the double jeopardy clause. *Albernez v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). However, I cannot agree that the appellants validly may be convicted under both the general conspiracy statute and the specific conspiracy statutes contained in the Drug Control Act. Accordingly, I must dissent.

As the Supreme Court has stated, the gist of the crime of conspiracy is the agreement or confederation of the conspirators to commit one or more unlawful acts. *Braverman v. United States*, 317 U.S. 49, 53, 63 S.Ct. 99, 101, 87 L.Ed. 23 (1942). As the Supreme Court made clear:

> Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one.

*Id.*

In the present case, the appellants were charged with a single conspiracy—one involving violation of the drug laws. In the process of carrying out the conspiracy, they would have violated a number of substantive laws. However, the conspiracy is presumptively a single offense and subject to a single penalty.

The court has since recognized an exception to this rule where a single conspiracy violates two statutes. *Albernez*, 450 U.S. 333, 101 S.Ct. 1137; *American Tobacco Co. v. United States*, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946). The rationale of these cases is that, if Congress so chooses, it can make the single agreement two offenses and punish it twice. However, the rules set forth in those cases are limited and cannot be used to validate imposition of punishment under both section 371 and section 963 or 846, such as occurred in this case.

In both *Albernez* and *American Tobacco* the conspiracy violated two *specific* conspiracy statutes. In *Albernez*, the conspiracy had as its aims both the importation and the distribution of a controlled substance. Congress has enacted specific statutes making it a crime to conspire to violate the substantive provisions of the Drug Control Act regarding importation, 21 U.S.C. § 963, and to conspire to violate the substantive provisions of the Drug Control Act regarding distribution, 21 U.S.C. § 846. The court thus found that, since the two statutes required proof of different objectives of the conspiracy, that Congress had clearly intended to make the single conspiracy which encompassed both of those aims subject to cumulative punishment.

Similarly, in *American Tobacco*, the defendant conspired to restrain trade and to monopolize. Congress has made each of

those ends of the conspiracy subject to criminal punishment under section 1 and section 2 of the Sherman Act. The court found that "section 1 and section 2 of the Sherman Act require proof of conspiracies which are reciprocally distinguishable from and independent of each other although the objects of the conspiracies may partially overlap." *American Tobacco*, 328 U.S. at 788, 66 S.Ct. at 1129.

In the present case, however, appellants were not convicted of violating two specific conspiracy statutes. Rather, each appellant was convicted of violating a specific conspiracy statute and also of violating the general conspiracy statute.[1] Under general rules of statutory construction, where specific conspiracy statutes have been enacted, Congress is presumed to have intended to replace the general conspiracy statute, not to supplement it. *United States v. Corral*, 578 F.2d 570, 572 (5th Cir.1978); *United States v. Marotta*, 518 F.2d 681, 684 (9th Cir.1975); *United States v. Mori*, 444 F.2d 240, 245 (5th Cir.1971), *cert. denied*, 404 U.S. 913, 92 S.Ct. 238, 30 L.Ed.2d 187 (1971). Thus, when Congress enacted sections 963 and 846, it indicated that a conspiracy to violate the drug laws should be punished under those specific statutes *rather than* under the general conspiracy statutes. *See Enzor v. United States*, 262 F.2d 172 (5th Cir.1958) (holding that, where a conspiracy to violate the drug laws is concerned, a defendant must be sentenced under the specific drug conspiracy statute rather than under the general conspiracy statute); *see also United States v. Bates*, 429 F.2d 557 (9th Cir.), *cert. denied*, 400 U.S. 831, 91 S.Ct. 61, 27 L.Ed.2d 61 (1970); *United States v. Afflerbach*, 754 F.2d 866 (10th Cir.1985) (McKay, J., dissenting). This view is supported by the legislative history, which states that one of the principal purposes of the Drug Control

Act was to provide "for an overall balanced scheme of criminal penalties for offenses involving drugs." H.R.Rep. No. 91–1444, *reprinted in* 1970 U.S.Code Cong. & Ad. News 4566, 4567.[2] Congress, therefore, did not intend to create separate offenses when it enacted section 371 and sections 963 and 846.

The majority ignores this rule of statutory construction and finds that the statutes describe different offenses under the test set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), because section 371 requires proof of an overt act while sections 963 and 846 do not. However, this analysis cannot withstand scrutiny. The test set forth in *Blockburger* is only a rule of statutory construction to help determine legislative intent. *Garrett v. United States*, — U.S. —, —, 105 S.Ct. 2407, 2411–12, 85 L.Ed.2d 764 (1985). It is not controlling when the legislative intent is clear from the face of the statute or the legislative history. *Missouri v. Hunter*, 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983). In light of the canon of statutory construction that Congress is presumed to intend a specific conspiracy statute to replace, rather than to supplement, a general one, *Mori*, 444 F.2d at 245, I believe that the legislative intent in this case is clear and that the test set forth in *Blockburger* does not control this decision.

Moreover, even if the *Blockburger* analysis is applied, I cannot believe that the requirement of proof of an overt act is sufficient, in the context of a conspiracy case, to satisfy the requirement of proof of an additional element. In the only two cases in which the Supreme Court has found congressional intent to create two offenses out of a single conspiracy, each statute required proof of a different *objective* of the conspiracy. *Albernaz*, 450 U.S.

---

1. Section 371 provides that:
   If two or more persons conspire either to commit an offense against the United States ... and one or more of such persons do any acts to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

2. Congress made it easier to prove drug conspiracies by refusing to require proof of an overt act, and stiffened the penalties over those provided in the general conspiracy statute, thus indicating an intent to punish drug conspiracies more harshly than other types of conspiracies.

333, 101 S.Ct. 1137; *American Tobacco*, 328 U.S. 781, 66 S.Ct. 1125. One interpretation of the conspiracy cases thus is that a single agreement cannot make the appellant guilty of as many offenses as the agreement has criminal objects, *Braverman*, 317 U.S. at 53, 63 S.Ct. at 101, unless Congress has made conspiracy to commit those particular offenses specifically criminal, thus indicating its intent that the single conspiracy be considered more than one offense. *But see United States v. Barton*, 647 F.2d 224 (2d Cir.), *cert. denied*, 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981) (finding that 18 U.S.C. § 1962(d) and 18 U.S.C. § 371 constitute separate offenses because section 371 requires proof of an overt act and section 1962(d) does not).

Under the rule the majority sets forth, a conspiracy with only one objective—importation of drugs in violation of § 952, for example—would constitute two offenses if one of the conspirators committed an overt act in furtherance of the conspiracy. In such a situation, proof that a defendant had violated section 371 would *necessarily* prove the violation of section 963 as well. As in *Ball v. United States*, —— U.S. ——, ——, 105 S.Ct. 1668, 1673, 84 L.Ed.2d 740 (1985) (*quoting Albernaz*, 450 U.S. at 343, 101 S.Ct. at 1144), "[t]he independent, but overlapping statutes simply are not 'directed to separate evils' under the circumstances." I cannot believe the Congress' decision not to require proof of an overt act in drug conspiracies indicates an intent to make one conspiracy two offenses simply because an overt act has been committed in furtherance of the conspiracy.

In deciding that the conspiracy statutes describe different offenses under the *Blockburger* test, the majority also relies on the fact that "[c]onviction on the § 371 count requires proof of an element, intent to travel in interstate commerce," which the charges under the drug conspiracy statutes do not. Maj. Op. at 5. It is not clear whether the majority believes that this element is required by § 371 itself, or whether it believes that, because the element is part of the crime as charged, it can be used to

satisfy the *Blockburger* test even though it is not contained in the conspiracy statute itself. In either event, I cannot agree.

Section 371 itself makes no mention of travel in interstate commerce. Rather, proof of intent to travel in interstate commerce was required in this case only because 18 U.S.C. § 1952(a)(3), the substantive statute which the appellants are charged with conspiring to violate, requires proof of travel in interstate commerce, so proof of conspiracy to violate section 1952(a)(3) requires proof of intent to commit that element of the underlying crime.

If the majority's statement reflects a belief that elements that are required, not by the conspiracy statute itself, but by the underlying statute which the appellants are charged with conspiring to violate are sufficient to satisfy the *Blockburger* test, their decision is inconsistent with *Blockburger* itself. In *Blockburger*, the Supreme Court held that

> where the same act constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether *each provision* requires proof of a fact which the other does not.

284 U.S. at 304, 52 S.Ct. at 182 (emphasis added). Since the appellants are charged with violating section 371, the focus of the *Blockburger* analysis must be on the elements required by section 371 itself. Because section 371 does not require proof of intent to travel in interstate commerce, that element cannot be used to satisfy *Blockburger*'s requirement that each statutory provision require proof of a fact which the other does not.

The majority's approach would expand *Blockburger* in the context of conspiracy cases to allow consideration of the elements, not only of the conspiracy statute itself, but of whatever substantive statute the government has charged the appellants with conspiring to violate. The result of such an expansion would be that we would be required to find two separate offenses subject to separate punishment whenever

the government charged, under two separate counts, conspiracy to violate two different substantive laws, so long as those substantive laws required proof of reciprocally different facts. Indeed, we would be required to do so even if the conspiracy charges were based on the same conspiracy statute, since the crimes *as charged* would require proof of reciprocally different facts. Such a result is flatly inconsistent with *Braverman,* which the majority not only does not distinguish but totally fails to cite.

The defendants in *Braverman* were indicted on seven counts under section 37 of the Criminal Code, the predecessor to section 371. Although each count charged conspiracy to violate a separate and distinct internal revenue law, the Court found the multiple convictions to violate the double jeopardy clause since "it is the conspiracy which is the crime, however diverse its objects." 317 U.S. at 54, 63 S.Ct. at 102 (quoting *Frohwerk v. United States,* 249 U.S. 204, 210, 39 S.Ct. 249, 252, 63 L.Ed. 561). The constitutional impediment cannot be avoided simply by taking the diverse objects of the conspiracy and dividing them among different conspiracy statutes unless those statutes, *by themselves,* create separate offenses. As discussed, the single conspiracy can be punished more than once only when Congress has clearly indicated its intent to do so by enacting two conspiracy statutes which, in and of themselves, satisfy the test for creation of two separate offenses. Since, as discussed, I find that section 371 does not create a separate offense under either the statutory construction rules of *Mori* or under the *Blockburger* test, *Braverman* bars multiple punishment in this case.

Where Congress intended to create two different offenses, it is presumed that it intended to permit cumulative sentences. *Garrett v. United States,* —— U.S. ——, ——, 105 S.Ct. 2407, 2419, 85 L.Ed.2d 764 (1985). However, where, as here, the statutory provisions proscribe the same offense, they have been construed not to authorize cumulative punishments in the absence of a clear indication of contrary

legislative intent. *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983); *Whalen v. United States,* 445 U.S. 684, 691–92, 100 S.Ct. 1432, 1437–38, 63 L.Ed.2d 715 (1980). Since we have no clear indication of congressional intent to punish drug conspiracies under both the specific and the general statutes, we must presume it did not intend cumulative punishment.

Since Congress did not intend to authorize cumulative punishment, multiple punishments for a single conspiracy violates the double jeopardy clause.

I would set aside the convictions under 18 U.S.C. § 371 and remand for sentencing under the provisions of 21 U.S.C. §§ 963 and 846 in the case of appellant Engelhart, and 21 U.S.C. § 963 and 18 U.S.C. § 1952(a)(3) in the case of appellant Timberlake.