**Colon O. WARD, Petitioner-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee.**

No. 81–5832.

United States Court of Appeals, Eleventh Circuit.

Jan. 3, 1983.

Robert S. Windholz, Atlanta, Ga., for petitioner-appellant.

Kenneth W. Sukhia, Asst. U.S. Atty., Tallahassee, Fla., for respondent-appellee.

Before VANCE, ANDERSON, Circuit Judges, and ALLGOOD *, District Judge.

R. LANIER ANDERSON, III, Circuit Judge:

Colon O. Ward appeals from the denial of his petition to vacate sentence under 28 U.S.C.A. § 2255 by the United States District Court for the Northern District of Florida. Ward raises several issues on this appeal. We affirm the district court's denial of relief as to all but one of Ward's claims, but reverse and vacate one of his conspiracy convictions on the basis of multiplicity.

## I. FACTS

Ward, members of his family, and others were engaged in receiving, possessing and disposing of trucks, tractors, and other vehicles stolen from interstate commerce. Ward was subsequently indicted on sixteen counts of a twenty-count indictment. Following a jury trial, he was convicted on fifteen counts: one count of conspiracy to receive shipments stolen from interstate commerce (18 U.S.C.A. § 371 (West 1966) and 18 U.S.C.A. § 659 (West 1976)), two counts of receiving stolen shipments (§ 659), eleven counts of receiving and concealing stolen vehicles moving in interstate commerce (18 U.S.C.A. § 2313 (West 1970)), and one count of conspiracy to receive and conceal stolen vehicles moving in interstate commerce (§§ 371 and 2313). Excluding concurrent sentences, Ward was sentenced to twenty-five years in prison. On direct appeal, Ward's conviction was affirmed by a unanimous panel of the Former Fifth Circuit. *United States v. Ward,* 552 F.2d 1080 (5th Cir.), *cert. denied,* 434 U.S. 850, 98 S.Ct. 161, 54 L.Ed.2d 119 (1977).

In his § 2255 petition to the district court[1] Ward raised the following

---

\* Honorable Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. Ward raised substantially the same issues in an earlier unsuccessful motion under § 2255. At oral argument, and for the first time, the government urged that the present motion under § 2255 should be dismissed as a successive writ. Section 2255 provides in part:

 The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner. 28 U.S.C.A. § 2255 (West 1971). The government apparently did not raise this issue below and by order dated June 22, 1981, the district court denied petitioner's motion on the merits. The government now requests that this court dismiss the motion.

 There are two answers to this contention. First, the denial of petitioner's earlier motion was affirmed by the Former Fifth Circuit in an unpublished opinion "without prejudice, however, to filing of a new motion in that regard provided it faithfully complies with the rules governing § 2255 proceedings for the United States District Courts effective February 1, 1977." Thus, it appears that petitioner was granted leave to raise the same issues in a subsequent § 2255 motion. Secondly, the language of § 2255 pertaining to successive motions is not mandatory. Rather, it provides the sentencing judge with broad discretion to dismiss the successive petition if, in his considered judgment, he finds that substantially identical claims either were made or reasonably should have been made in an earlier motion under § 2255. *See Sanders v. United States,* 373 U.S. 1, 18–19, 83 S.Ct. 1068, 1078–79, 10 L.Ed.2d 148 (1963); *Andrews v. United States,* 286 F.2d 829, 829 (5th Cir.1961). Conversely, the court also has broad discretion to proceed to the merits of the subsequent motion notwithstanding that it might be open to chal-

claims for relief: (1) the trial court was without jurisdiction to sentence him because of an improperly filed superseding indictment; (2) the indictment was duplicitous as to two substantive counts under § 659 and as to eleven substantive counts under § 2313; (3) the indictment was multiplicious as to counts 1 and 20, the conspiracy counts; (4) Ward was denied effective assistance of counsel at trial; (5) the trial court's conduct of jury selection deprived Ward of his right to a fair and impartial jury; and (6) Ward's character was wrongfully placed in evidence by evidence of other crimes.

On appeal of the district court's denial of his motion, Ward renews all but the last of these claims. We affirm the district court's findings on all claims except that relating to multiplicity. Because in our view the separate conspiracies of which Ward was convicted arose from but one agreement, we reverse and vacate the conviction and sentence on one of the conspiracy counts.

## II. THE SUPERSEDING INDICTMENT

Ward was first arraigned on a twenty-count indictment on February 12, 1976. On March 11, a superseding indictment was filed, adding Ward's name to one of the conspiracy counts, and correcting the serial number of one of the stolen vehicles he was alleged to have received under one of the substantive counts.[2] He was arraigned on this second indictment on March 19, and trial commenced on April 19. After his conviction under the superseding indictment the district court dismissed the original indictment pursuant to the government's motion.

Ward now contends that the second indictment was invalid because it was not returned by a grand jury, and that in fact he was tried on the first indictment. He asserts that the court's dismissal of that indictment after his conviction but before sentencing withdrew jurisdiction from the district court to sentence him. We agree with the district court, however, that this contention is without merit.

Ward's argument amounts to an unsubstantiated claim that the second indictment was not submitted to the grand jury. An indictment regular on its face, however, carries with it a strong presumption of validity. *See United States v. James,* 290 F.2d 866, 869 (5th Cir.), *cert. denied,* 368 U.S. 834, 82 S.Ct. 60, 7 L.Ed.2d 36 (1961).[3] In this case, the superseding indictment was signed by the same grand jury foreperson who signed the original indictment. Because this signature constitutes an attestation to the act of the grand jury, *see United States v. Cox,* 342 F.2d 167, 171–72 (5th Cir.) (en banc), *cert. denied sub nom. Cox v. Hauberg,* 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965), and because Ward has produced no credible evidence to indicate otherwise, we must presume that the superseding indictment was properly returned by the grand jury. Thus, the district court's dismissal of the first indictment after Ward's conviction had no effect on either the validity of his conviction or the court's authority to sentence him. *See United States v. Gower,* 447 F.2d 187, 189 & n. 2 (5th Cir.), *cert. denied,* 404 U.S. 850, 92 S.Ct. 84, 30 L.Ed.2d 88 (1971). No other alleged defects in the indictment rise to the

lenge as a successive motion. *See Sanders v. United States,* 373 U.S. at 18–19, 83 S.Ct. at 1078–79. Either decision by the district court will be overturned by this court only for an abuse of discretion. *Lawary v. United States,* 599 F.2d 218, 221 (7th Cir.1979). Because the government did not raise this objection below, and has not shown that the district court abused its discretion in proceeding to the merits of petitioner's second motion, we must conclude that the court's action was within its discretion, and the present appeal is properly before this court. *See id.* at 221.

2. Several counts involving defendants other than Ward also were changed by the second indictment. In all other respects, the indictments are identical.

3. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

level required for obtaining relief under § 2255.[4]

## III. THE ALLOWABLE UNIT OF PROSECUTION UNDER 18 U.S.C.A. § 659

■ Ward next contends that it was improper to convict him for two separate violations of 18 U.S.C.A. § 659 for receiving and possessing four stolen tractors which were all being transported on one truck-tractor at the time they were stolen.[5] He correctly points out that this court must determine the "allowable unit of prosecution" under § 659, *Bell v. United States,* 349 U.S. 81, 81, 75 S.Ct. 620, 621, 99 L.Ed. 905 (1955), and argues that in this case it is all "goods or chattels" taken in a single theft. Brief for Petitioner at p. 23. The government contends that the proper unit of prosecution is each "shipment"—in this case, each tractor that was ultimately bound for a different destination, regardless of whether it was temporarily being transported with others at the time it was stolen.[6]

The Former Fifth Circuit has held that each discreet shipment that is the object of a prohibited act under § 659 constitutes one

allowable unit of prosecution. *See United States v. Gilbert,* 537 F.2d 118, 119 (5th Cir.1976), *remanded for reconsideration on other grounds,* 430 U.S. 902, 97 S.Ct. 1169, 51 L.Ed.2d 578 (1977), *aff'd on remand,* 573 F.2d 346 (5th Cir.1978). *Accord, Oddo v. United States,* 171 F.2d 854, 856 (2d Cir.), *cert. denied,* 337 U.S. 943, 69 S.Ct. 1498, 93 L.Ed. 1747 (1949). Thus, each tractor received by Ward which was ultimately bound for a different destination would constitute one shipment and one allowable unit of prosecution, regardless of whether all tractors were at one time traveling together in interstate commerce.[7] Because the vehicle received under count 3 was destined for Springdale, Arkansas, while the vehicle received under count 4 was bound for Seymour, Missouri, we affirm the district court's ruling.

## IV. THE ALLOWABLE UNIT OF PROSECUTION UNDER 18 U.S.C.A. § 2313

■ Each of counts 7, 8, 9, 10, 11, 12, 14, 15, 16, 18, and 19 charges Ward with receiving, concealing, and storing one separate stolen vehicle in violation of 18 U.S.C.A.

---

**4.** Insofar as petitioner alleges technical deficiencies in the superseding indictment, the record indicates that no objections were raised prior to trial. Such claims therefore are waived under Fed.R.Crim.P. 12(b). *See United States v. Varner,* 437 F.2d 1195, 1197 (5th Cir. 1971) (per curiam), *cert. denied,* 404 U.S. 825, 92 S.Ct. 52, 30 L.Ed.2d 52 (1971).

**5.** Section 659 imposes a fine or imprisonment on:

> Whoever embezzles, steals, or unlawfully takes, carries away, or conceals, or by fraud or deception obtains from any pipeline system, railroad car, wagon, motor truck, or other vehicle, or from any tank or storage facility, station, stationhouse, platform or depot, or from any steamboat, vessel, or wharf, or from any aircraft, air terminal, airport, aircraft terminal or air navigation facility with intent to convert to his own use *any goods or chattels moving as or which are a part of or which constitute an interstate or foreign shipment of freight, express, or other property;* or
>
> Whoever buys or receives or has in his possession any such goods or chattels, knowing

the same to have been embezzled or stolen

. . . .

18 U.S.C.A. § 659 (West 1976) (emphasis added).

**6.** Although § 659 prohibits theft as well as receiving and possessing, Ward was charged only with receiving and possessing these vehicles.

**7.** Petitioner's reliance upon *United States v. Sahley,* 526 F.2d 913 (5th Cir.1976), is misplaced. In *Sahley,* the defendant's conviction on three counts of violating 18 U.S.C.A. § 1014 (1976) by making a material false statement or report to a federally insured bank was predicated on three false assertions contained in one financial statement. A panel of the Former Fifth Circuit vacated the defendant's sentence because the statutory references to "statement" and "report" made clear Congress' intent to make each financial report, not each falsehood contained therein, the unit of prosecution. Here, the statute is equally clear in its reference to "shipment." Because the vehicles in counts 4 and 5 were bound for different destinations, each vehicle constituted a separate shipment of goods, and hence could be the subject of separate prosecutions.

§ 2313.[8] Ward claims that because all eleven vehicles covered in these counts were seized by the government at the same time, he should have been charged with only one violation of § 2313. We disagree.

There is no basis in § 2313 for petitioner's somewhat unique theory of the unit of prosecution. Unlike his claim under § 659, he does not contend that he received the vehicles in these counts at one time and as one transaction. It must be assumed, therefore, that he received, concealed, and stored each vehicle as a separate act. Thus, regardless of whether the allowable unit of prosecution under § 2313 is each vehicle received or each separate act of receiving vehicles, each of the eleven counts in question could properly focus on one particular vehicle.[9]

8. Section 2313 provides:
 Whoever receives, conceals, stores, barters, sells, or disposes of *any motor vehicle or aircraft,* moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both. 18 U.S.C.A. § 2313 (West 1970) (emphasis added).

9. The government has urged that we adopt the construction of § 2313 suggested by three other circuits. *See United States v. Van Cleave,* 599 F.2d 954 (10th Cir.1979); *United States v. Bennett,* 383 F.2d 398 (6th Cir.1967), *cert. denied,* 390 U.S. 972, 88 S.Ct. 1077, 19 L.Ed.2d 1184 (1968); *United States v. Antrobus,* 191 F.2d 969 (3d Cir.1951), *cert. denied,* 343 U.S. 902, 72 S.Ct. 637, 96 L.Ed. 1321 (1952). These cases all involved 18 U.S.C.A. § 2312 (1970), a companion to § 2313, which is aimed at "[w]hoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen." 18 U.S.C. § 2312. In all three cases, the courts held that the allowable unit of prosecution is the transportation of *each vehicle.* Thus, each vehicle, regardless of whether it constitutes a part of one overall act of transportation by the defendant, may be the subject of a separate count under § 2312. Our disposition of petitioner's claim does not require us to determine whether to follow the "each vehicle" line of cases or to construe § 2313 as allowing only one prosecution where all interstate vehicles were received or possessed by the defendant at the same time. We note a certain tension between these cases, however, and the precise holding in *Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955). In *Bell,* the Supreme Court

## V. THE MULTIPLICIOUS INDICTMENT

Count 1 charges Ward and three others under 18 U.S.C.A. § 371 [10] with conspiring to violate 18 U.S.C.A. § 659 by receiving, possessing and concealing three vehicles which had been embezzled and stolen while being shipped in interstate commerce. Count 20 charges Ward and six others under § 371 with conspiring to violate 18 U.S.C.A. § 2313 by receiving, storing, bartering, selling and disposing of motor vehicles moving as, and a part of interstate commerce.[11] Ward alleges that together these two counts charge one ongoing conspiracy which properly may be the subject of but one count under the indictment.

 "Multiplicity" is the charging of a single offense in more than one count.

held that the allowable unit of prosecution under the Mann Act is not each woman transported across state lines, but each act of transportation, regardless of how many women are transported. Significantly, the Mann Act parallels the language of §§ 2312 and 2313: "Whoever knowingly transports in interstate or foreign commerce . . . any woman or girl." 18 U.S.C.A. § 2421 (West 1970). The Court viewed this language as insufficient to demonstrate Congress' intent to establish the unit of prosecution as each woman transported, and resolved the ambiguity in favor of lenity for the accused. In doing so, the Court noted that the constitutional basis for the Mann Act "is the withdrawal of the facilities of interstate transportation." 349 U.S. at 83, 75 S.Ct. at 622. Much the same could be said for §§ 2312 and 2313. *Cf. United States v. McCrary,* 643 F.2d 323, 326–28 (5th Cir.1981). We reserve this question, however, for a case in which it is squarely presented.

10. This section provides in part:
 If two or more persons conspire . . . to commit any offense against the United States . . . and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both. 18 U.S.C.A. § 371 (West 1966).

11. The essential difference between §§ 659 and 2313 is that the former covers the possession of virtually any item which may be shipped, while § 2313 covers only motor vehicles and aircraft. *See* notes 5, 8 *supra.* On the other hand, § 2313 covers a broader range of illegal activities, including the *disposition* of stolen vehicles.

United States v. De la Torre, 634 F.2d 792, 794 (5th Cir.1981); United States v. Free, 574 F.2d 1221, 1224 (5th Cir.), cert. denied, 439 U.S. 873, 99 S.Ct. 209, 58 L.Ed.2d 187 (1978). Generally, the test for determining whether an indictment is multiplicious is that set forth by the Supreme Court in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932): "Whether each provision requires proof of an additional fact which the other does not." 284 U.S. at 304, 52 S.Ct. at 182; see United States v. De la Torre, 634 F.2d at 795; United States v. Free, 574 F.2d at 1224. When the charges alleged to be multiplicious are overlapping or similar conspiracies, however, the issue is more complex, and depends primarily upon whether the separate conspiracies alleged are each based upon a general federal conspiracy statute, such as § 371, or instead are based on separate provisions outlawing specific types of conspiracies. See generally United States v. Rodriguez, 612 F.2d 906 (5th Cir.1980) (en banc), aff'd sub nom. Albernaz v. United States, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); United States v. Marable, 578 F.2d 151, 153–54 (5th Cir.1978).

The Former Fifth Circuit has held that a single conspiracy that violates two specific conspiracy statutes may be treated as two separate conspiracies without violating the double jeopardy clause. See United States v. Rodriguez, 612 F.2d at 915–21;[12] United States v. Dyar, 574 F.2d 1385 (5th Cir.1978); United States v. Houltin, 525 F.2d 943 (5th Cir.1976). When, however, the separate conspiracies are both founded upon a general conspiracy statute, the relevant inquiry is whether there existed more than one agreement to perform some illegal act or acts. See Braverman v. United States, 317 U.S. 49, 52–53, 63 S.Ct. 99, 101, 87 L.Ed. 23 (1942); United States v. Rodriguez, 612 F.2d at 912; United States v. Mori, 444 F.2d 240, 242 (5th Cir.), cert. denied, 404 U.S. 913, 92 S.Ct. 238, 30 L.Ed.2d 187 (1971); Youst v. United States, 151 F.2d 666, 667 (5th Cir.1945); United States v. Mallah, 503 F.2d 971, 985 (2d Cir. 1974). See also United States v. Marable, 578 F.2d at 153. This is true even when the illegal acts supporting each conspiracy alleged are themselves violations of different substantive provisions of the criminal code. United States v. Mori, 444 F.2d at 243–44. "The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute [§ 371] of the Criminal Code." Braverman v. United States, 317 U.S. at 54, 63 S.Ct. at 102; see also Albernaz v. United States, 450 U.S. at 339–41, 101 S.Ct. at 1142–43; United States v. DiStefano, 361 F.Supp. 971, 976 (N.D.Fla. 1973).[13] Thus, we must determine in this case whether the indictment demonstrates only one agreement between Ward and his co-conspirators to violate different provi-

---

**12.** This ruling was affirmed by the Supreme Court in Albernaz v. United States, 450 U.S. at 337–44, 101 S.Ct. at 1141–45.

**13.** The distinction between prosecution for multiple conspiracies under one conspiracy statute and prosecution for multiple conspiracies under separate conspiracy statutes arises because in each case the question is whether the legislature authorized separate punishments for separate offenses. See Albernaz v. United States, 450 U.S. at 337–41, 101 S.Ct. at 1141–43; United States v. Marable, 578 F.2d at 154 n.1. When Congress has authorized punishment for specific types of conspiracies, a defendant may be prosecuted for each, regardless of whether the different prohibited objects were the subject of but one conspiratorial agreement. See 450 U.S. at 337–41, 101 S.Ct. at 1141–43. When, however, multiple prosecutions proceed on the basis of one conspiracy statute, it cannot be said that Congress intended separate punishments based on the underlying illegal objects; the object prohibited is the conspiracy and not the substantive activity. See id. at 339–40, 101 S.Ct. at 1142–43. Thus, "under a single conspiracy statute only one offense of conspiracy can occur from a single agreement." United States v. Marable, 578 F.2d at 153. Finally, the foregoing distinction governs whether the claim is based on statutory grounds or Fifth Amendment double jeopardy grounds:

[T]he question of what punishments are constitutionally permissible is not different from the question of what punishment the Legislative Branch intended to be imposed. Where Congress intended, as it did here, to impose multiple punishments, imposition of such sentences does not violate the Constitution. Albernaz v. United States, 450 U.S. at 344, 101 S.Ct. at 1145.

sions of the criminal code. In making this determination, we are free to look beyond the face of the indictment and examine the trial record. *United States v. Marable,* 578 F.2d at 153.[14]

 The larger of the two conspiracy counts, count 20, arises from an ongoing scheme involving much of Ward's family. Together with five of his relatives and an acquaintance, Ward was continually receiving stolen vehicles, most often farm equipment, and was engaged in painting, refurbishing, altering serial numbers, and selling this equipment. According to the indictment, this conspiracy lasted from January 1, 1973, to September 20, 1975, and involved at least fifteen vehicles, all moving in interstate commerce at one time or another during the course of the conspiracy.

According to count 1, however, Ward simultaneously took part in a smaller conspiracy lasting from October 1, 1974, to March 30, 1975. Three out of the four conspirators in this count also were indicted under count 20,[15] and the basis for the conspiracy, again, was receiving and concealing shipments of vehicles stolen from interstate commerce. The record shows that Ward and his cohorts managed to come into possession of three tractors which had been stolen while being transported on a large truck/tractor moving in interstate commerce, and that they managed to dispose of at least one of these vehicles. None of the three vehicles listed in count 1 are mentioned in count 20. On the other hand, both conspiracies involved essentially the same type of illegal activity—the various conspirators in both counts would somehow acquire stolen farm equipment, repaint it, alter the serial numbers, and then try to dispose of the merchandise.

Clearly, there is substantial overlap between the two conspiracies alleged. All those convicted under the smaller conspiracy were likewise convicted as participants in the larger one.[16] Likewise, the dates between which the smaller conspiracy took place are included within the time period in which the larger conspiracy was occurring. *Compare United States v. Westover,* 511 F.2d 1154, 1156 (9th Cir.), *cert. denied,* 422 U.S. 1009, 95 S.Ct. 2633, 45 L.Ed.2d 673 (1975). Finally, the basis for both conspiracies was receiving stolen vehicles, and most of the vehicles came to rest at one time or another on Ward's property. *Compare United States v. Papa,* 533 F.2d 815, 822 (2d Cir.), *cert. denied,* 429 U.S. 961, 97 S.Ct. 387, 50 L.Ed.2d 329 (1976).

We find it particularly significant that one of the vehicles concealed, received and stored by the conspirators, according to overt act number 1 of count 20, was the very truck/tractor which was *transporting* the vehicles that were the subject of the conspiracy in count 1.[17] It seems extremely

---

**14.** In *Marable,* the defendant had been convicted at one trial of conspiracy to possess cocaine with intent to distribute, and then subsequently was convicted at another trial of conspiracy to possess *heroin* with intent to distribute. Both convictions were for violations of 21 U.S.C.A. § 846. The court stated:

> Testing whether two alleged conspiracies are in fact the same calls upon us to make an inquiry into the record more detailed than that required with respect to other offenses under the "same evidence" test ... because, by · the nature of the crime, the precise bounds of a single conspiracy seldom will be clear from the indictment alone. The gist of the crime of conspiracy and the characteristic which defines its breadth is the unlawful agreement.... Thus, to determine whether the government can prosecute a defendant for more than one conspiracy, we must determine whether there was more than one agreement.

578 F.2d at 153 (citations omitted). The court was careful to distinguish the case involving multiple conspiracy prosecutions under a single conspiracy statute from that involving multiple conspiracies charged under *separate* conspiracy statutes. *Id.* at 154 n. 1.

**15.** The conspirators under count 20 were: Colon O. Ward, Ross Deal, Alfred O. Ward, Luke Ward, Al Lamar Ward, Oscar Devonne Ward, and Wiley Rufus Ward. Those charged in count 1 were: Colon O. Ward, Alfred O. Ward, Ross Deal, and Leon Anderson.

**16.** The only co-conspirator in count 1 who was not listed in count 20, Leon Anderson, was acquitted by the court. (T–657).

**17.** The conspiracy in count 1 relates to receiving and concealing three stolen Massey Fergu-

unlikely that all the members of the larger conspiracy would have agreed to receive, possess and conceal this large count 20 truck/tractor at the same time that three of them *separately* agreed to possess the three count 1 vehicles it was carrying.

The government, in its brief, places great reliance on the different substantive statutes underlying the separate conspiracy counts. Had the alleged conspiracies been based on specific conspiracy provisions, this argument would have merit. *See generally United States v. Rodriguez,* 612 F.2d at 913–20; *United States v. Dyar,* 574 F.2d 1385 (5th Cir.1978); *United States v. Mori,* 444 F.2d at 245; note 13 *supra.* When both conspiracies are founded upon the general conspiracy statute, however, the nature of the underlying illegal acts is not controlling. Of course, a significant variance in the different types of illegal behavior would be probative of whether in fact two separate agreements had been made. For example, in *Kerrigan v. United States,* 644 F.2d 47 (1st Cir.1981), the First Circuit had occasion to address two conspiracy convictions involving the transportation of stolen goods. The first count related to a shipment of stolen lithographs by three conspirators, and the second related to a shipment of stolen jewelry. In holding that the government sufficiently alleged two conspiracies, the court pointed out the different time periods involved in the conspiracies (overlapping by only one day) and emphasized that the crimes involved were "similar but distinct." *See United States v. Marable,* 578 F.2d at 154; *United States v. De Fillipo,* 590 F.2d 1228, 1234 (2d Cir.), *cert. denied,* 442 U.S. 920, 99 S.Ct. 2844, 61 L.Ed.2d 288 (1979).

Here, however, the smaller conspiracy was entirely subsumed in the larger conspiracy, and both §§ 659 and 2313 relate to the receiving and possessing of merchandise stolen from interstate commerce or moving in interstate commerce. *See United States v. Marable,* 578 F.2d at 153–56. In essence, the only significant differences between count 1 and count 20 are the different vehicles involved, as indicated by the overt acts in support of each count. However, "a test measuring only overt acts provides no protection against carving one larger conspiracy into smaller separate agreements." *United States v. Mallah,* 563 F.2d at 985. *See generally United States v. Stricklin,* 591 F.2d 1112 (5th Cir.1979). We conclude, therefore, that the indictment alleged but one ongoing conspiracy to receive, possess and conceal vehicles stolen in interstate commerce, and that Ward's conviction under two conspiracy counts was improper.

Normally in a situation such as this, where the two conspiracy convictions are "coterminous" or "overlapping," we would remand to the district court with instructions that the government elect which conspiracy conviction it wishes to leave in effect. The court would then sentence on this count and vacate the conviction and sentence under the remaining conspiracy count. *See United States v. Lentz,* 624 F.2d 1280, 1289 (5th Cir.), *cert. denied,* 450 U.S. 995, 101 S.Ct. 1696, 68 L.Ed.2d 194 (1980); *United States v. Dudley,* 581 F.2d 1193, 1198–99 (5th Cir.1978); *United States v. Chrane,* 529 F.2d 1236, 1238 (5th Cir. 1976). When it is obvious which of the two convictions cannot stand, however, we need not remand to the district court. *See Holland v. United States,* 384 F.2d 370, 371 (5th Cir.1967). Here, although either of the conspiracy convictions could stand by itself as a complete offense, it is clear that the smaller

son farm tractors. Overt act number 1 of the conspiracy alleged in count 20 relates to receiving, concealing, and storing "a 1973 International Harvester truck/tractor, Serial No. CGA29004." According to testimony at trial, as well as the prosecutor's opening and closing arguments, the three vehicles in count 1 were being transported on this truck/tractor when they were all stolen. T–9, 58–59, 732–741. Two of the count 1 vehicles and the count 20 truck/tractor subsequently were found on petitioner's property and recovered by the FBI agents on the same day. (T–146–47). Ward had already disposed of the third count 1 vehicle. There simply is no evidence that an agreement to receive the count 20 truck/tractor was exclusive of a simultaneous agreement by a "subset" of the conspirators to receive its contents, the three count 1 vehicles.

count 1 conspiracy was a part of the larger count 20 conspiracy. Therefore, we reverse and vacate only the conviction and sentence under count 1.[18]

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

Ward alleges that during the trial which resulted in his conviction he was denied effective assistance of counsel. The basis for this claim is an affidavit made out by one, Charles T. Campbell, purporting to outline a business arrangement in which Ward would receive "equipment" from Campbell, attempt to sell the equipment, and remit ninety percent of the sale price to Campbell. Ward claims that this document, dated March 10, 1973, demonstrates that his possession of the stolen farm equipment was pursuant to a legitimate business arrangement, and thus negates the inference that petitioner knew the equipment was stolen at the time he received it. Further, Ward alleges that he told his attorney of the existence of this affidavit and the arrangement it sets forth, and that he was "reasonably sure" he showed a copy of the document to his attorney. In addition, Ward claims to have told his attorney that Campbell and other witnesses were willing and able to testify as to both the affidavit and the arrangement. Record on Appeal, vol. 2, 77–78. Ward's attorney denied having been told of an affirmative defense of this nature, or of witnesses or facts to support it. *Id.* vol. 2, 21–30.

Thus, Ward's attorney did not seek to introduce either the document or any other evidence pertaining to the alleged business relationship between Ward and Campbell. Further, counsel introduced no evidence on the element of knowledge. Ward therefore claims that his attorney provided him ineffective assistance in failing either to investigate or to assert this one possible affirmative defense.

As this court has stated many times, the Sixth Amendment requires "not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance." *Washington v. Watkins,* 655 F.2d 1346, 1355 (5th Cir.1981), cert. denied, —— U.S. ——, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982); *MacKenna v. Ellis,* 280 F.2d 592, 599 (5th Cir.1960), aff'd, 289 F.2d 928 (5th Cir.) (en banc), cert. denied, 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961). The determination of whether counsel was ineffective must be "based on the totality of circumstances and the entire record," *Washington v. Watkins,* 655 F.2d at 1355, and the petitioner bears the burden of proving that counsel was constitutionally infirm. *United States v. Killian,* 639 F.2d 206, 210 (5th Cir.), cert. denied sub nom., *Brunk v. United States,* 451 U.S. 1021, 101 S.Ct. 3014, 69 L.Ed.2d 394 (1981); *United States v. Guerra,* 628 F.2d 410, 413 (5th Cir.1980) (per curiam), cert. denied, 450 U.S. 934, 101 S.Ct. 1398, 67 L.Ed.2d 369 (1981).

The record demonstrates, and the court below found, that Ward's trial counsel competently represented his client both before and during trial, raising objections, examining witnesses, performing legal and factual research, and making various motions on behalf of Ward. Viewed in its entirety, then, counsel's conduct does not even approach that which this court has labeled ineffective in other cases. *See, e.g., Young v. Zant,* 677 F.2d 792 (11th Cir.1982); *Nero v. Blackburn,* 597 F.2d 991 (5th Cir. 1979); *Gomez v. Beto,* 462 F.2d 596, 597 (5th Cir.1972) (per curiam).

Of course, this court has held on occasion that the failure by counsel to pursue his client's sole affirmative defense when re-

---

18. Ward contends that under *Milanovich v. United States,* 365 U.S. 551, 555, 81 S.Ct. 728, 730, 5 L.Ed.2d 773 (1961), he is entitled to a new trial. As a panel of the Former Fifth Circuit pointed out in *United States v. Mori,* 444 F.2d at 245–46, *Milanovich* involved a prosecution for inconsistent offenses. Here, however, the offenses are either coterminous or overlapping, and a new trial is not required. *Id.; see United States v. Chrane,* 529 F.2d at 1238. Ward's conviction for the larger conspiracy in count 20 was valid. It is difficult to believe a jury would arrive at a contrary conclusion were the acts alleged in the count 1 conspiracy now to be added to the count 20 conspiracy, as our holding requires.

quested to do so may, by itself, support a finding of ineffective assistance. *See Gaines v. Hopper,* 575 F.2d 1147, 1148–50 (5th Cir.1978) (per curiam); *Gomez v. Beto,* 462 F.2d at 596–597. If it were true, therefore, that Ward raised an affirmative defense with counsel and brought supporting witnesses to the attention of his attorney, then in the absence of strategic reasons for not pursuing these leads Ward might have a valid claim.

The very issue of whether petitioner brought this potential defense to the attention of counsel, however, was hotly contested below. After a full evidentiary hearing, the magistrate credited the testimony of trial counsel and not that of Ward, and expressly found that "the petitioner never informed his counsel of any reasonably available affirmative defenses or facts which would have led counsel to consider such defenses." [19] Record on Appeal, vol. 2, 98–100. This finding by the magistrate, adopted by the district court, is amply supported by the record and by the magistrate's ability to view the witnesses firsthand. Because this finding is not clearly erroneous, it must be sustained.

## VII. REMAINING CONTENTIONS

Ward contends that his attempts to secure post-conviction relief have been prejudiced by the inability of his counsel on direct appeal [20] to view the sealed transcript of portions of the voir dire examination of potential jurors in his trial. In particular, Ward argues that he was forced to exercise a preemptory challenge to a prospective juror who should have been excused for cause, and that this prejudiced his defense.

Our examination of the entire record discloses that one prospective juror was the wife of an FBI agent who had participated in a fruitless search of Ward's property. Ward's counsel asked that this juror be removed from the panel for cause. The judge denied this request, and counsel subsequently used a preemptory challenge to strike her from the jury.

The refusal by a trial court to strike a prospective juror for cause may be reversed only for an abuse of discretion. *See United States v. Garza,* 574 F.2d 298, 303 (5th Cir.1978). Further, the party challenging such a refusal must demonstrate that the juror in question exhibited actual bias: That is, either an express admission of bias, or proof of specific facts showing such a close connection to the circumstances of the case that bias must be presumed. *See United States v. Nell,* 526 F.2d 1223, 1227–30 (5th Cir.1976). Because Ward has demonstrated neither form of bias, we must uphold the district court's decision. *Compare id.*[21]

---

19. At the evidentiary hearing, trial counsel pointed out that given the size of the conspiracies alleged and the number of defendants involved, clear evidence of an affirmative defense of this nature would have been "jumped on" by seven or eight attorneys "like the cat on a dog." Record on Appeal, vol. 2, 46. *Compare Gomez v. Beto,* 462 F.2d at 598 (counsel knew of defendant's only defense and was given names of witnesses, yet failed to contact them).

20. Ward's counsel on direct appeal and on the present appeal of the denial of his § 2255 motion is not the attorney who represented him at trial.

21. In *Nell,* the defendant had been convicted of embezzling union funds. During the jury selection, the defendant had been forced to exercise a preemptory challenge to a juror who had some connection with the case. As a member of a rival union, this prospective juror had participated in a large-scale riot with the defendant's union. One of the counts in defendant's indictment directly related to this riot. Significantly, the court of appeals refused to find that this constituted actual bias. However, it reversed on the basis of the trial court's refusal to pursue this information to determine whether such bias in fact existed. *See* 526 F.2d at 1228–30. In the case before us, the trial judge clearly pursued the possibility of juror prejudice. His refusal to excuse the juror in question thus represents a reasoned decision on his part. Finally, our review of the transcript demonstrates that the overall conduct of voir dire by the trial court was entirely proper. *See United States v. Booher,* 641 F.2d 218, 219 (5th Cir.1981); *United States v. Sarris,* 632 F.2d 1341 (5th Cir.1980) (per curiam); *United States v. Gerald,* 624 F.2d 1291, 1295–98 (5th Cir. 1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1369, 67 L.Ed.2d 348 (1981).

Ward also challenges the inability of his counsel on appeal to review the sealed portions of the voir dire proceedings. We note, however, that there is no question that all portions of voir dire were in fact transcribed, as well as available to Ward upon appropriate motion. Thus, this case is unlike others in which the complete failure to transcribe various proceedings was determined to be prejudicial *per se* to a defendant who retains new counsel on appeal. *See United States v. Selva,* 559 F.2d 1303, 1305–06 (5th Cir.1977); *United States v. Gregory,* 472 F.2d 484, 486–87 (5th Cir. 1973).[22] Because Ward could have secured a copy of these sealed transcripts, and because our own review of the transcript discloses no error in the trial court's conduct of voir dire, we affirm the district court's ruling.

Finally, over counsel's objections, the trial court allowed an FBI agent to testify as to conversations he had with the driver of one of the stolen vehicles. This hearsay testimony was admitted under Fed. R.Evid. 804(b)(5) because, according to the government, the declarant was unavailable. *See United States v. Ward,* 552 F.2d 1080 (5th Cir.), *cert. denied,* 434 U.S. 850, 98 S.Ct. 161, 54 L.Ed.2d 119 (1977).[23] Now, Ward contends that the hearsay declarant was in fact available and that this was known to the government at the time that it proffered the hearsay testimony. Because there is absolutely no support for this allegation in the record, however, we hold that it is without merit. *See United States v. Jones,* 614 F.2d 80, 82 (5th Cir.1980).

### VIII. CONCLUSION

On the basis of the foregoing discussion, we affirm the order of the district court in all respects save one. Because Ward's conviction for two counts of conspiracy was multiplicious, we reverse on this ground and vacate Ward's conviction and sentence under Count 1.

VACATED IN PART AND AFFIRMED IN PART.

---

**22.** These cases held that under the Court Reporter Act, 28 U.S.C.A. § 753 (West 1968), a criminal defendant represented on appeal by new counsel who challenges the failure to record a significant portion of a trial proceeding need not demonstrate specific prejudice in order to obtain relief.

**23.** According to the government, the declarant had been arrested on an unrelated state charge, but had escaped from state custody at the time of trial. *See United States v. Ward,* 552 F.2d at 1082 & n. 4. Petitioner has presented no evidence to refute the declarant's unavailability.