**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Francis RAVEL, Defendant–Appellant.**

**No. 89–50247.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 10, 1990.

Decided April 11, 1991.

Robert S. Gerstein, Santa Monica, Cal., for defendant-appellant.

Mark J. Werksman, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before REINHARDT and LEAVY, Circuit Judges, and KING *, District Judge.

LEAVY, Circuit Judge:

A jury convicted Francis Ravel ("Ravel") on two of three counts of possessing stolen goods. Ravel now appeals, arguing that the district court erred by denying his motion to dismiss all but one count, by denying his request for the use of expert testimony and rejecting his requested jury instruction on the Uniform Commercial Code ("UCC"), by failing to answer properly a question posed by the jury during its deliberations, and by denying his motion for a new trial based on allegedly inflammatory comments made by the prosecutor during closing argument. We affirm in part, reverse in part and remand.

## FACTS AND PROCEEDINGS

On January 14, 1986, an interstate shipment of Epson computer equipment was stolen in Ontario, California. The driver of the truck from which the goods were taken reported the theft to the local police and to persons at Epson's warehouse in Carson, California. Epson West, a regional distributor of Epson computer equipment, did not notify local dealers of the theft until March 1986, when it was announced in the company's quarterly newsletter. As an Epson retailer, Ravel received a copy of the newsletter.

Meanwhile, Ravel as the owner of Olympic Sales Company of Los Angeles, purchased in three lots on three separate occasions a total of 400 Epson computer printers, as well as other related equipment, from two men who claimed that the items came from a bankrupt business. Ravel paid a total of $60,000 in currency and received, in addition to the computer equipment, three hand-printed "receipts," none of which identified the goods by quantity or serial number. Ravel testified that, prior to acquiring the goods, he telephoned Epson to find out whether any of its computer shipments had been stolen and was told that Epson knew of no such loss. Shortly thereafter Ravel placed some of his computer inventory, including most of the stolen items, in rented warehouse space.

Upon learning that Ravel had sold 20 of the stolen Epson printers to PC Upgrades of Van Nuys, California, the Federal Bureau of Investigation ("FBI") appeared at Ravel's place of business on March 15, 1986, and confiscated 62 stolen printers. At no time during the search of his business did Ravel tell the FBI of the more than 300 stolen items still in his inventory. Two days later the president of Epson received a letter from Ravel stating that Ravel had learned of the theft through the company's quarterly newsletter, that he was assisting the authorities in their search, and that he wanted a list of the stolen items' serial numbers. On that same day, Ravel rented a bin at a self-storage warehouse in Hollywood under the fictitious name of F.C. Levar (i.e., Ravel spelled backwards), where he transferred more than 300 items of computer equipment, including stolen Epson printers.

The following week Ravel met with a representative of Epson West, and without disclosing that he was hiding more than 300 stolen Epson printers and related equipment, demanded reimbursement of the amount he claimed to have paid for those goods. His demand was rejected.

On July 8, 1986, Ravel sold 30 of the stolen printers to Jade Computers of Hawthorne, California. On July 25, 1986, the FBI returned to Ravel's place of business and seized 12 more stolen printers. Again, Ravel made no mention of the stolen computer equipment he had in storage. On January 5, 1987, Ravel directed a private investigator hired by Epson's insurer to the Hollywood self-storage bin, where the remaining stolen goods were recovered.

On October 4, 1988, a federal grand jury handed down a superseding indictment charging Ravel with three counts of possessing stolen goods, all in violation of 18

* Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting    by designation.

U.S.C. § 659. Specifically, Ravel was charged with: Count I, possessing 30 stolen Epson printers on July 8, 1986 (the 30 sold to Jade Computers on that date); Count II, possessing 12 stolen Epson printers on July 25, 1986 (the 12 seized by the FBI on that date); and Count III, possessing 380 stolen Epson printers, monitors, and keyboards on January 5, 1987 (the goods found by the investigator on that date). Ravel pleaded not guilty and proceeded to trial. The jury returned a verdict of guilty on Counts I and II and not guilty as to Count III. Ravel was sentenced to two concurrent five-year terms of probation, and he has timely appealed.

## DISCUSSION

### I

Ravel first argues that the district court misinterpreted 18 U.S.C. § 659 in its determination of the appropriate unit of prosecution by holding that Ravel could be charged with and tried on three separate counts of possessing stolen merchandise when the goods in question all came from a single stolen shipment.

Title 18, section 659 states, in relevant part:

> Whoever buys or receives or has in his possession any ... goods [stolen from an interstate shipment], ... knowing the same to have been ... stolen[,] ... [s]hall in each case be fined not more than $5,000 or imprisoned not more than ten years, or both[.]

■ We review de novo a district court's interpretation of a statute for the purpose of determining the appropriate unit of prosecution thereunder. *United States v. Douglass*, 780 F.2d 1472, 1477 (9th Cir. 1986) (unit of prosecution under 18 U.S.C. § 1952).

■ The indictment does not charge Ravel with three separate counts of buying or receiving stolen goods relating to the three occasions when he purchased the goods, but rather with three counts of possession coinciding with the dates on which

his possession of the goods terminated, first by sale to Jade Computers, second by seizure by the FBI, and third by seizure by the insurance investigator. Because of our holding, we need not decide whether possession of stolen goods all from a single shipment can constitute more than one unit of prosecution, nor do we need to decide whether goods stolen from a single shipment but acquired on three separate occasions may give rise to three units of prosecution. *Cf. United States v. Gann*, 732 F.2d 714, 721 (9th Cir.) (receipt of goods on separate occasions and storage in separate locations supported separate units of prosecution under 18 U.S.C. § 922(h)), *cert. denied*, 469 U.S. 1034, 105 S.Ct. 505, 83 L.Ed.2d 397 (1984). Likewise, we need not concern ourselves with Count III of the indictment because of Ravel's acquittal on that count.

We hold that Ravel's possession of the 30 items sold on July 8 and the 12 items seized on July 25 is a single continuous act which constitutes one unit of prosecution.

■ In a case involving a conviction on multiple counts of receiving stolen goods in violation of, *inter alia*, 18 U.S.C. § 659, the Court of Appeals for the 11th Circuit rejected the argument that the appropriate unit of prosecution should be determined by *when* the government seizes those goods. *Ward v. United States*, 694 F.2d 654, 660 & n. 9 (11th Cir.1983). We agree, and hold that the crime of possession of stolen goods cannot be fragmented, either on the basis of when the government elects to seize a particular portion of the goods or when the defendant disposes of a portion. *Cf. id. See also United States v. Anderson*, 709 F.2d 1305, 1306 (9th Cir. 1983) (theft of six parcels on one occasion required consolidation of multiple counts into single unit of prosecution under 18 U.S.C. § 1708), *cert. denied*, 465 U.S. 1104, 104 S.Ct. 1605, 80 L.Ed.2d 135 (1984). We therefore remand with instructions that the district court declare Counts I and II to be a single offense and resentence accordingly.[1]

1. Because we conclude that the acts with which    Ravel had been charged constitute a single

## II

Ravel next argues that the district court erred by denying both his request for a jury instruction and his offer of expert testimony on the status of the goods as "stolen" under the UCC. While this court has not definitively ruled whether a district court's refusal to accept a proffered instruction should be reviewed de novo or for an abuse of discretion, *see United States v. Davis*, 876 F.2d 71, 72 (9th Cir.) (per curiam), *cert. denied*, —— U.S. ——, 110 S.Ct. 188, 107 L.Ed.2d 143 (1989), we need not resolve this question, as the result would be the same regardless of which standard were employed.

Ravel requested an instruction relating to his contention that he had obtained at least a voidable title to the goods and could not have been guilty of criminal possession thereof. It was based upon the California version of UCC § 2–403, and reads as follows:

> If, from the evidence, you find that title to the goods in Defendant's possession did not pass to him before he acquired knowledge the goods were stolen but, by their conduct, the owners of the goods invested Defendant with the right to retain possession of the goods, then such possession would not be criminal even against subsequent demands for the return thereof.

■ The government argues that Ravel was not entitled to an instruction based on the UCC because federal law, rather than state law, controls. In support of its position, the government cites the Eighth Circuit's decision in *United States v. Rorex*, 737 F.2d 753, 757 (8th Cir.1984), and UCC § 7–103, which recognizes the supremacy of federal law over the UCC. While we acknowledge that federal law defines the crime for which Ravel was convicted, we note also that state law, including the UCC, may be relevant to the determination

whether property is "stolen" for purposes of interpreting a federal criminal statute. *See, e.g., United States v. Luttrell*, 889 F.2d 806, 810 (9th Cir.1989) (citing the UCC to reject defendant's argument that credit card drafts were not "lost, stolen, expired, revoked, canceled, or obtained with intent to defraud" under 18 U.S.C. § 1029(e)(3)), *amended on other grounds*, 923 F.2d 764 (9th Cir.1991) (en banc). We may assume without deciding that UCC § 2–403 could provide a defense to the charge of possession of stolen goods under 18 U.S.C. § 659, because even on that assumption Ravel was not entitled to his proposed jury instruction.

■ Ravel's theory of the case was that Epson, by failing to notify him that the machines were stolen, and by subsequently failing to provide the serial numbers of the stolen machines, "invested [him] with the right to retain possession of the goods." However, he overstates the scope of section 2–403. That provision is designed to deal with a situation where A buys goods from B, only to discover that B did not have the right to sell the goods because they really belonged to C. Section 2–403 provides that if C "entrusted" the goods to B, and B is in the business of selling the type of goods entrusted, as between A and C, A has a superior claim to the goods. *See generally* W. Hawkland, 2 *Uniform Commercial Code Series*, § 2–403:07 (1984).[2]

It is clear that section 2–403 has no bearing on Ravel's case. Ravel bought the goods from thieves who stole them from a truck. There is no contention that Epson entrusted the goods to the thieves.

■ Moreover, even if section 2–403 provided that someone who buys stolen goods may keep those goods in his possession when the rightful owner subsequently "entrusts" the goods to him, Ravel would not

crime under 18 U.S.C. § 659, we need not and do not address his claim of error concerning the jury's request for clarification during its deliberations and the court's supplemental instruction thereon.

2. California has amended section 2–403, but that amendment makes it *more difficult* for a buyer of stolen goods to establish title to the goods than under the standard version of section 2–403. *See Budget Rent–A–Car v. Bergman*, 121 Cal.App.3d 256, 263, 175 Cal.Rptr. 286, 290 (1981).

have been entitled to the proposed UCC instruction because he offered insufficient evidence of entrustment. The most that can be said is that Ravel introduced evidence of Epson's failure to notify him that the goods were stolen and the failure of one of Epson's employees to provide serial numbers. These omissions did not rise to the level of a knowing transfer of control contemplated by UCC § 2–403(3), which states that "[e]ntrusting includes any delivery and any acquiescence in retention of possession" of the goods in question.

"A trial court must instruct the jury on a defendant's theory of the case only if the evidence sufficiently supports the theory and the theory is supported by law." *United States v. Sommerstedt*, 752 F.2d 1494, 1496 (9th Cir.), *modified on other grounds*, 760 F.2d 999, *cert. denied*, 474 U.S. 851, 106 S.Ct. 149, 88 L.Ed.2d 123 (1985). Because the evidence introduced by Ravel did not support his theory, and because that theory was in any event legally unsound, the district court did not err by rejecting his proposed jury instruction.

Our review of the trial court's instructions to the jury shows that the instructions given covered both the essential elements of the crime with which Ravel had been charged and properly explained his defense of lack of knowledge that the goods were stolen. Accordingly, the district court did not err in denying Ravel's request for a jury instruction on this issue.

█ Turning next to Ravel's argument concerning the need for expert testimony, we note that a district court's in limine order precluding such testimony is an evidentiary ruling subject to review for an abuse of discretion. *United States v. Komisaruk*, 885 F.2d 490, 492 (9th Cir. 1989).

█ Expert testimony is inappropriate to bolster the credibility of a defendant. *Komisaruk*, 885 F.2d at 494; *United States v. Brodie*, 858 F.2d 492, 496 (9th Cir.1988). The expert would have testified as to the reasonableness of Ravel's belief that the goods were not stolen, based on the UCC provision discussed above. It was within the district court's discretion to con-

clude that such testimony would have been of no appreciable help to the jury, but would have served instead only to confuse it. *See* F.R.Evid. 702; *United States v. Miller*, 874 F.2d 1255, 1266–67 (9th Cir. 1989); *United States v. Amaral*, 488 F.2d 1148, 1152 (9th Cir.1973). Accordingly, we find no abuse in the district court's ruling on these points, either.

## III

Finally, Ravel argues that the prosecutor made improper statements during closing argument concerning Ravel's being "in the best position" to produce the two men who had sold him the computer goods and that these witnesses could have helped his defense. Ravel contends that this comment both prejudiced his defense and acted to shift the burden of proof thereon. Neither contention has any merit.

█ We note that Ravel neither objected to the prosecutor's comments nor requested a curative instruction. Accordingly, we will only reverse on these grounds if we find plain error, *i.e.*, that "the prosecutor's misconduct would ... have changed the verdict." *United States v. Kessi*, 868 F.2d 1097, 1107 (9th Cir.1989). The record shows that the prosecutor's comments were made in response to Ravel's statement during closing argument that the government had failed to produce the two witnesses and had not therefore proven its case.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.